175 P.3d 179

**BIRDWOOD SUBDIVISION HOME-OWNERS' ASSOCIATION, INC., an Idaho nonprofit corporation, and Amy C. Browning, individually, and as co-trustee of the Amy G. Browning Revocable Trust dated July 8, 2005, Plaintiffs–Counterdefendants–Appellants,**

v.

**BULOTTI CONSTRUCTION, INC., an Idaho corporation, Defendant–Counterclaimant–Respondent.**

No. 33391.

Supreme Court of Idaho, Twin Falls, November 2007 Term.

Dec. 24, 2007.

EISMANN, Chief Justice.

This is an appeal from a summary judgment holding that recorded restrictive covenants which were not signed by the owner of a platted subdivision, or the owner's agent, do not bind the subsequent purchaser of a lot in the subdivision. We affirm the judgment of the district court and award attorney fees on appeal.

## I. FACTS AND PROCEDURAL HISTORY

In 1979, W. Pauline Bird (Bird) acquired title to certain real property located in the City of Hailey, Blaine County, Idaho. On March 31, 1981, a plat showing the "Bird Wood Subdivision" (Subdivision) was recorded in the office of the county recorder. The plat divided Bird's land into fifteen lots. Lots 1 through 12 were located side-by-side in a southwest-northeast line. Each of them was generally rectangular in shape and contained .41 acres. A road ran along the southeast end of each lot. Lot 13 was an irregularly shaped lot containing 2.17 acres and located to the southwest of Lots 1 through 12 across a road. Lots 14 and 15 were generally rectangular in shape with the long side of Lot 14 adjoining the back (northwest) ends of Lots 8 through 12, and the long side of Lot 15 adjoining the back ends of Lots 1 through 7. Lot 14 contained 1.72 acres, and Lot 15 contained 2.20 acres. The plat was signed by Bird's three children, none of whom had any interest of record in the real property. There was also nothing of record showing that they had authority to plat the real property on her behalf.

On the same day but prior to the recording of the plat, a "Declaration of Covenants, Conditions and Restrictions of Bird Wood Subdivision" (1981 Covenants) was recorded in the office of the county recorder. The Covenants were signed by two of Bird's children, but not by her. There was nothing showing that they had authority to execute the Covenants on her behalf.

Between November of 1980 and November of 1992, Bird conveyed several parcels of land in the Subdivision by reference to the plat. On April 18, 1990, she also signed a

John A. Seiller, IV, Ketchum, for appellant.

Robertson & Slette, PLLC, Twin Falls, for respondent. Gary D. Slette argued.

document given to the City of Hailey in which she stated that she was the developer of the Subdivision and warranted that the water and sewer services had been installed to Lots 9, 10, and 11 and that electrical service had been installed to those lots and paid for.

On November 12, 1992, Bird conveyed Lot 15 to "The W. Pauline Dockstader Revocable Trust Dated November 12, 1992"[1] (Trust). In early 2003, Bulotti Construction, Inc., (Bulotti) contracted to purchase Lot 15 in the Subdivision. After entering into that contract, Bulotti sent a letter dated March 20, 2003, to each lot owner in the subdivision asking consent to subdivide Lot 15 into four lots on which he would build homes. The 1981 Covenants provided, "Only one (1) single-family dwelling, including guest and/or service quarters may be erected upon each such lot."

On June 12, 2003, an application to subdivide Lot 15 was submitted to the City of Hailey. The application was signed by Bird as owner and by Bulotti as her representative. On the same date, Bulotti, through its counsel, sent a letter to each lot owner in the Subdivision stating that Bulotti intended to subdivide Lot 15 into four lots and that doing so was not expressly prohibited by the 1981 Covenants. The letter asked each lot owner to consent to an amendment of the 1981 Covenants to expressly permit the subdivision of Lot 15 into not more than four lots in order to avoid court action. Bulloti did not obtain consent to its requested amendments.

Bulotti obtained title to the property by a warranty deed dated September 9, 2003. On October 27, 2003, the Birdwood Subdivision Homeowners' Association (Association) recorded a document entitled "Amended and Restated Declaration Establishing Covenants Conditions and Restrictions for Birdwood Subdivision" (2003 Covenants), which prohibited the further subdivision of lots within the Subdivision. On March 15, 2006, the Association and Amy C. Browning, as president of the Association and owner of Lot 5 in the

Subdivision, (Plaintiffs)[2] brought this action seeking to enforce the 1981 and 2003 Covenants against Bulotti and enjoining it from subdividing Lot 15. Bulotti counterclaimed seeking a determination that the Covenants did not apply to it.

Both parties moved for summary judgment. The district court held that because the 1981 Covenants had not been signed by anyone in the chain of title to Lot 15, neither they nor the 2003 Covenants applied to that parcel. The Plaintiffs then timely appealed.

## II. ISSUES ON APPEAL

1. Did the district court err in holding that the 1981 Covenants do not apply to Lot 15?

2. Did the district court err in holding that Bulotti was not estopped from denying that the 1981 Covenants applied to Lot 15?

3. Did the district court err in failing to hold that Lot 15 was subject to an equitable servitude preventing further subdivision of the lot?

4. Is either party entitled to an award of attorney fees on appeal?

## III. ANALYSIS

In an appeal from an order of summary judgment, this Court's standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment. *Infanger v. City of Salmon*, 137 Idaho 45, 44 P.3d 1100 (2002). All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Id.* Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.* If the evidence reveals no disputed issues of material fact, then only a question of law

---

1. Bird had remarried and went by Dockstader.

2. The complaint alleges that Browning brought this action individually and as co-trustee of the

Amy C. Browning Revocable Trust dated July 8, 2005, but the complaint does not allege any claim on behalf of that Trust.

remains, over which this Court exercises free review. *Id.*

## A. Did the District Court Err in Holding that the 1981 Covenants Do Not Apply to Lot 15?

■ "Covenants restricting the free use of land are valid and enforceable in Idaho." *Berezowski v. Schuman*, 141 Idaho 532, 535, 112 P.3d 820, 823 (2005). "However, since restrictive covenants are in derogation of the common law right to use land for all lawful purposes, the Court will not extend by implication any restriction not clearly expressed. Further, all doubts are to be resolved in favor of the free use of land." *Id.* (citations omitted).

■ In this case, Bird did not sign the 1981 Covenants, nor is there any evidence that she authorized her children to sign them on her behalf. It is axiomatic that one person cannot unilaterally restrict the use of another's land simply by drafting and recording restrictive covenants allegedly applicable to that land. Therefore, the Covenants signed by Bird's children did not bind the land.

■ The Plaintiffs contend that Bird's later conveyance of parcels using deeds that referred to the plat constitutes ratification of the 1981 Covenants. Although many persons who plat real property also adopt restrictive covenants applicable to the platted parcels, they certainly are not required to do so. Platting the real property and adopting restrictive covenants are two separate transactions. That Bird may have ratified the platting of her property by later selling lots with reference to the plat does not show that she ratified the Covenants.

■ The Plaintiffs argue that the reference to "covenants" or "restrictions" of record in three of the deeds executed by Bird shows she ratified the 1981 Covenants. Although restrictions on the use of land can be included in a deed, none of the deeds by which Bird transferred any of the fifteen lots included any reference to the 1981 Covenants. Bird conveyed eleven of the lots by warranty deed, using nine separate deeds. Three of those nine deeds included provisions stating that the grants were subject to various items of record. The remaining warranty deeds did not include any such provision, nor did the grant deed by which Bird conveyed Lot 15 to the Trust on November 12, 1992.

The deed transferring Lot 5 stated that the conveyance was subject to "Taxes, easements, restrictions, encumbrances, covenants, and assessments as shown of record, if any." The deed transferring Lots 9 and 10 stated that the conveyance was subject to "Easements, restrictions and encumbrances of records." The deed transferring Lot 11 stated that the conveyance was subject to "Easements, Restrictions, and Encumbrances of record." These provisions in three of the deeds were simply generic language typically included in warranty deeds to create exceptions to the covenants of the warranty deeds. *Akers v. D.L. White Constr., Inc.*, 142 Idaho 293, 127 P.3d 196 (2005). None of the deeds expressly referred to the 1981 Covenants, nor could they reasonably be interpreted as incorporating those Covenants by reference.

■ The warranty deed conveying Lot 15 to Bulotti also stated that the grant was subject to "Taxes, easements, restrictions, reservations, assessments and encumbrances as shown of record, if any." Again, this language simply creates exceptions to the covenants in the warranty deed. It does not incorporate the 1981 Covenants or impose any restrictions on the grantee.

The district court did not err in holding that the 1981 Covenants did not apply to Lot 15. Since those Covenants did not apply to Lot 15, the 2003 Covenants likewise did not apply because the other lot owners had no authority to adopt covenants that would be applicable to Lot 15.

## B. Did the District Court Err in Holding that Bulotti Was Not Estopped from Denying that the 1981 Covenants Applied to Lot 15?

■ The Plaintiffs contend that Bulotti should be estopped from denying that the 1981 Covenants apply to Lot 15 because it initially took the position that the Covenants

did apply to Lot 15. It sent to each lot owner in the Subdivision a letter dated March 20, 2003, in which Bulotti stated that the 1981 Covenants only allow a single family residence on Lot 15. Bulotti requested that the lot owners consent to an amendment of the Covenants so it could subdivide Lot 15 into four lots. About three months later, Bulotti's counsel sent each lot owner a letter dated June 12, 2003, in which he stated that the 1981 Covenants were ambiguous because they did not expressly prohibit subdividing Lot 15. He asked the lot owners to agree to amend the 1981 Covenants to permit subdividing Lot 15 in order to avoid having to have the matter decided by litigation. The lot owners did not agree to the requested amendments to the Covenants. Bulotti later discovered that the 1981 Covenants had not been signed by Bird or by an agent who had authority to do so. It therefore took the position that the Covenants did not apply to Lot 15. The Plaintiffs contend that quasi-estoppel prevents Bulotti from this change of position.

■■■ "Quasi-estoppel prevents a party from successfully asserting a position inconsistent with a previously-taken position, with knowledge of the facts and of its rights, to the detriment of the person seeking to invoke it." *Christensen v. City of Pocatello,* 142 Idaho 132, 139, 124 P.3d 1008, 1015 (2005). "Furthermore, for quasi-estoppel to apply, it must be unconscionable to allow the party to be estopped to maintain an inconsistent position." *Eastern Idaho Agricultural Credit Ass'n v. Neibaur,* 133 Idaho 402, 411, 987 P.2d 314, 323 (1999). Unconscionability must be shown in addition to the change of position; a change in position does not by itself establish unconscionability. *In re Estate of Elliott,* 141 Idaho 177, 183, 108 P.3d 324, 330 (2005); *accord, Garner v. Bartschi,* 139 Idaho 430, 80 P.3d 1031 (2003).

The Plaintiffs contend that it is unconscionable to permit Bulotti to change its position regarding the application of the 1981 Covenants to Lot 15. They argue that Bulotti must be held to have taken its first position with knowledge of the facts and of its rights because it knew of the 1981 Covenants and, as the purchaser of Lot 15, it was charged with notice of every matter affecting title to the Lot that appeared on the face of any recorded deed forming an essential link in its chain of title. It was therefore charged with knowledge that Bird was the owner of Lot 15 in 1981, as is shown by the recorded deeds, and with knowledge that Bird had not signed the 1981 Covenants.

It is uncontroverted that Bulotti was unaware that the 1981 Covenants did not apply to Lot 15 when it sent the initial two letters to the lot owners in the Subdivision. We have not previously addressed whether imputed knowledge from the county records constitutes knowledge of the facts for the purposes of quasi-estoppel. If it did, then the Plaintiffs also had that imputed knowledge and would be held to have known that Bulotti was mistaken in believing that the Covenants applied to Lot 15. Nevertheless, the Plaintiffs have not pointed to any facts that by any stretch of the imagination could show unconscionability. They have not shown how Bulotti either gained an advantage or caused them a disadvantage by changing its position once it learned of the facts, or that the Plaintiffs were induced to change their position by any statements in Bulotti's letters. Their asserted harm comes from the fact that as a matter of law the 1981 Covenants do not apply to Lot 15, not from Bulotti's alleged change in position.

■■■ The Plaintiffs also argue that the doctrine of quasi-estoppel should apply to Bird to prevent Bulotti, her successor in interest, from denying that the 1981 Covenants apply to Lot 15. The conduct upon which the Plaintiffs base this argument is Bird selling the lots by reference to the plat recorded by her children. As discussed above, Bird's conduct in selling the lots by reference to the plat does not constitute any adoption of the 1981 Covenants by reference, nor does it constitute any representation that those Covenants apply to the lots in the Subdivision.

■■■ The Plaintiffs next assert that Bird may have benefited from the 1981 Covenants because the lots may have been more saleable if the purchasers of the lots believed that the Covenants applied to the Subdivi-

sion. The doctrine of quasi-estoppel applies where it would be unconscionable to allow a person to maintain a position inconsistent with the one in which he or she acquiesced, or of which he or she accepted a benefit. *In re Estate of Elliott,* 141 Idaho 177, 183, 108 P.3d 324, 330 (2005). Assuming that Bulotti would be bound if quasi-estoppel applied to Bird, there is no evidence that Bird ever knew of the 1981 Covenants or took a position one way or the other regarding them.

**C. Did the District Court Err in Failing to Hold that Lot 15 Was Subject to an Equitable Servitude Preventing Further Subdivision of the Lot?**

 The Plaintiffs contend that there should be an equitable servitude preventing any further subdivision of any lots in the Subdivision, including Lot 15. "Generally speaking, a restrictive covenant may arise by implication from the language of the deeds, or from the conduct of the parties. Implied covenants are not favored, however, so that in order for a restriction to be thus created, the implication must be plain and unmistakable, or necessary." 20 Am.Jur.2d, Covenants, Etc., § 155 (2005). The problem with the Plaintiffs' argument regarding an equitable servitude is that there are no facts supporting it.

The Plaintiffs rely upon cases holding that if the common grantor of property develops land for sale in lots and includes substantially similar restrictions, conditions, and covenants against the use of the property in the deeds conveying various lots, the purchasers of those lots may enforce similar restrictions against the residential lot or lots retained by the grantor or the lots subsequently sold by the grantor without those restrictions. In this case, Bird did not include any restrictions, conditions, or covenants in the deeds conveying any of the lots in the Subdivision. Therefore, there is no factual basis for inferring reciprocal restrictions on the land she retained.

 The Plaintiffs have not argued that selling lots by reference to a subdivision plat implies a covenant that the lots will remain the same size as platted, and it clearly does not. "[A] conveyance of lots by reference to a recorded map or plat does not in itself raise any implied covenant that the lots will remain as shown on the map or plat, or that they may not later be changed in size or further subdivided." 20 Am.Jur.2d, Covenants, Etc., § 156 (2005). Indeed, if Lot 15 is subdivided into four lots as intended by Bulotti, each of those lots will be larger than Lots 1 through 12 of the Subdivision.

**D. Is Either Party Entitled to an Award of Attorney Fees on Appeal?**

 The Plaintiffs seek an award of attorney fees on appeal based upon a provision in the 2003 Covenants entitling the prevailing party to an award of attorney fees in any action brought to enforce the Covenants. Since the Plaintiffs are not the prevailing parties in this appeal and Bulotti is not a party to the Covenants, the Plaintiffs are not entitled to an award of attorney fees.

Bulotti seeks an award of attorney fees pursuant to Idaho Code § 12–121. It can be awarded attorney fees on appeal under that statute only if the appeal was brought frivolously, unreasonably, or without foundation. *Gustaves v. Gustaves,* 138 Idaho 64, 57 P.3d 775 (2002). The appeal in this case so qualifies. The Plaintiffs' arguments are simply not supported by the facts. We therefore award Bulotti attorney fees on appeal.

**IV. CONCLUSION**

The judgment of the district court is affirmed. We award costs, including a reasonable attorney fee, to the respondent.

Justices BURDICK, J. JONES, W. JONES and HORTON concur.