203 P.3d 677

**SADDLEHORN RANCH LANDOWNER'S, INC.; William Cheney; Nathan Gaston; Robert Krechter; Michael & Tracy McFadin; Thomas Phillips; Lawrence M. Thompson, Plaintiffs–Counterdefendants–Respondents–Cross Appellants,**

v.

**Christy B. DYER; Dan Dyer; and Christy B. Dyer as trustee of the Christy B. Dyer Children's Trust Fund, Defendants–Counterclaimants–Appellants–Cross Respondents.**

No. 34605.

Supreme Court of Idaho,
Twin Falls, November 2008 Term.

Jan. 21, 2009.

Holden, Kidwell, Hahn & Crapo, PLLC, Idaho Falls, for appellant. DeAnne Casperson argued.

Pike & Miller, P.A., Driggs, and Roy H. Andes, Helena, Montana, pro hac vice for respondent. Roy Andes argued.

W. JONES, Justice.

This case arises out of a dispute over ownership of two parcels of land in the Saddlehorn Ranch subdivision. Christy and Dan Dyer, husband and wife, (the Dyers) and Christy Dyer as trustee of the Christy B. Dyer Children's trust fund (the Trust) appeal the district court's decision granting in part, and denying in part, the parties' cross-motions for summary judgment. Saddlehorn Ranch Landowner's, Inc. (the Association) cross-appeals to this Court.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1982 the Dyers entered into a contract of sale for their property to Dale and Janet Sykes (the Sykes). The agreement required the Sykes, who intended to develop the property into a residential subdivision, to make periodic payments to the Dyers and, in exchange, the Dyers would release certain parcels to the Sykes to be sold. The Sykes subdivided and recorded the original plat in 1982 under the name of Le Emeraude. The R–Lots are referenced in the 1982 plat and appear exactly the same in the 1996 plat. The disputed parcels are labeled as "R" lots on the plat recorded in 1982 by the Sykes and re-recorded in 1996 by Christy Dyer. The plat legend defines "R" lots as "Reserved." Lot 1–R is labeled as "Gravel Pit and Future Recreation Lot" and lot 4–R is labeled as "Recreation Center." As the Sykes made payments on the property, the Dyers released portions of the property to the Sykes and the Sykes subsequently sold those parcels. The Sykes recorded the "Amended master declaration of restrictive covenants and conditions for Le Emeraude subdivision" (the Covenants) in March of 1984.

In 1987 the Sykes defaulted on the contract and the Dyers initiated foreclosure proceedings. The Dyers acquired 73 of the original 123 lots in the subdivision by sheriff's deed in 1990. In 1994, after the foreclosure proceedings were complete, Christy Dyer incorporated the Association and subsequently re-filed the plat in 1996. The name

of the subdivision was changed to Saddlehorn Ranch in 1994 following incorporation.

The following are the relevant portions of the Covenants which reference any common areas or recreation areas in the subdivision. The 1984 covenants were referenced and re-iterated when Christy Dyer incorporated the subdivision in 1994.

Paragraph 12 states "COMMON AREA, if any, shall mean any area that may be designated on any current plat as common area."

Section 2.08 reads "Zoning Regulations. No lands within the subdivision shall ever be occupied or used by or for any building or purpose or in any manner which is contrary to the zoning regulations applicable thereto validily [sic] in force from time to time. Buildings shall be restricted to single family dwelling units and associated structures only."

Article IV "COMMON AREA" reads "The following conditions shall apply to the common area, if any: Section 4.01 Common area. The common area, if any, and any improvements or facilities located thereon shall be owned by the Master Association and shall be subject to the rules and regulations of the Master Association."

Section 5.04 "Duties of the Master Association" recites "C. Operation of Le Emeraude Common Area. To operate and maintain, or provide for the operation and maintenance of the common area and to keep all Improvements of whatever kind and for whatever purpose from time to time located thereon in good order and repair, including but not limited to all recreation facilities, utilities, waterworks and sewage facilities located therein."

In 1994 and 1999 Christy Dyer, as president of the Association signed and recorded amendments to the master declaration. None of the amendments reference any of the provisions listed above.

In May of 2005 the Association filed a complaint against the Dyers. The Association filed a motion for summary judgment in July of 2006, and the Dyers filed a cross-motion for summary judgment in April 2007. The district court granted and denied, in part, both motions. The Dyers appealed and the Association cross-appealed to this Court.

## ISSUES ON APPEAL

The following issues are presented to this Court on appeal:

1. Whether the district court erred by failing to apply the statute of limitations, thereby barring the Association's claims.

2. Whether the district court erred when it found that the foreclosure decree did not grant priority to the Dyers over the Association's alleged property rights.

3. Whether Christy Dyer's signature, acting in her individual capacity, on the subdivision plat is sufficient to bind the other two co-owners, Dan Dyer and Christy Dyer as trustee for the Trust, to any subsequent findings of common law dedication.

4. Whether the district court erred by failing to consider the "surrounding circumstances" in finding that the Dyers' dedicated the R-lots to the Association.

5. Whether the Dyers are entitled to attorney's fees on appeal.

6. Whether the Association is entitled to attorney's fees on appeal.

## STANDARD OF REVIEW

This Court employs the same standard as the trial court in an appeal from an order granting summary judgment. *Infanger v. City of Salmon*, 137 Idaho 45, 46–47, 44 P.3d 1100, 1101–02 (2002). "All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Id.* at 47, 44 P.3d at 1102. Summary judgment will be granted if the pleadings, depositions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

This Court freely reviews questions of law. *Id.* Only questions of law remain where there

is no genuine issue as to any material fact. *Id.*

**The district court did not err when it held that the Association's claims were not barred by the statute of limitations.**

■ The Dyers claim that it was error for the district court not to apply I.C. § 5–216 which would bar the Associations' claim. I.C. § 5–216 states that an action upon a written contract shall be brought within 5 years. I.C. § 5–216. The statutory time period does not begin to run until a cause of action has accrued. *Simons v. Simons,* 134 Idaho 824, 830, 11 P.3d 20, 26 (2000).

This Court holds that until the Dyers interfered with the Association's rights in the R–Lots the statute did not begin to run. The Association filed its complaint on May 20, 2005; therefore any interference must have occurred prior to May 20, 2000. The record shows that competing interests in the R-lots were first addressed at the 1995 homeowner's association meeting with no resolution of the matter. Christy Dyer offered to sell the R-lots to the Association at the 1996 meeting, also claiming ownership in the lots at that point in time. The association meeting minutes only disclose a constant dispute between the Association and the Dyers over ownership of the land and whether the Association should purchase the land from the Dyers. It wasn't until September of 2002 that Christy Dyer sent a letter to the owners stating that "[n]ever has any of [the Dyers] property been deeded to the new owner's with any representation that it would include *any rights* in the lots 1R and 4R." (Emphasis added). This is the first action by the Dyers that implied that the Association had no rights to use the R–Lots. Prior to the 2002 letter, the only disagreement was whether the Association owned or the Dyers owned the R–Lots. No party ever disputed the Association's rights to use the R–Lots prior to the 2002 letter.

The law of dedication clearly states that dedication is not a transfer of title in the land, but the grant of an easement. Common law dedication does not grant ownership of the parcel in another, but a limited right to use the land for a specific purpose. In this instance an easement was granted by the district court to the Association for recreational purposes. Christy Dyers' repeated offers to sell the R–Lots to the Association, or her statements that the Dyers own the R–Lots do not interfere with the property rights of the Association. The Association members own a limited right to use the R–Lots, but do not own the R–Lots. Therefore, it necessarily follows that a cause of action did not accrue in this case until the Dyers interfered or made known to the Association that members were not allowed to use the land for recreational purposes. Any statements of land ownership are factually true assertions and do not give rise to a cause of action. Therefore, the Associations' cause of action began to run when the Dyers first gave notice to the Association that no rights, even the limited right to use the land for recreational purposes, existed. This Court affirms the district court's holding that the statute of limitations has not run for this action.

**The district court did not find that the foreclosure decree granted priority to the Association.**

The Dyers argue in their brief that "the district court erred by finding that the judgment and decree of foreclosure failed to give the Dyers priority over [the Association's] alleged property rights." This argument misconstrues the findings of the district court. The district court did not find that the Association's claim had priority over the Dyers after the foreclosure proceedings. The district court found that by re-recording the 1982 plat in 1996 the Dyers dedicated the land for the Association's recreational use. This Court declines to address this issue because it misstates the district court's findings.

**Christy Dyer's signature, acting in her individual capacity, on the subdivision plat is sufficient to bind co-owners, Dan Dyer and Christy Dyer as trustee for the Trust, because the recorded plat was ratified by the actions of the other co-owners.**

■ The 1996 plat contains only the signature of Christy Dyer although Dan and Christy Dyer and the Trust are the title holders to the R-lots. The Dyers argue that

Christy Dyer lacked the authority to dedicate the R-lots through the 1996 plat without Dan Dyer's signature or the signature of Christy Dyer as trustee of the Trust. A dedication is only valid if it is made by someone who owns the land without qualification. *See generally* 23 Am.Jur. 2D *Dedication* § 15. However, co-owners of property may make a binding dedication without the consent of all owners if one of the owners is legally authorized to act on behalf of the other owners or if the other owners consent. *Id.*

■ This Court has not specifically addressed whether all owners must sign a dedication. However, we have required signatures in the context of whether a covenant is binding on real property. *Birdwood Subdivision Homeowners' Ass'n, Inc. v. Bulotti Const., Inc.,* 145 Idaho 17, 21, 175 P.3d 179, 183 (2007). If signatures are required of all co-owners of property in order to make the land bound by a covenant, it logically follows that signatures of all the land owners would be required for a valid dedication to occur. "It is axiomatic that one person cannot unilaterally restrict the use of another's land simply by drafting and recording restrictive covenants allegedly applicable to that land." *Id.* at 21, 175 P.3d at 183.

In *Birdwood,* the Birdwood subdivision plat and covenants were signed and recorded in 1981 by the property owner's children. The question presented to this Court was whether the covenants were binding on the land if the land owner did not sign the 1981 covenants. This Court held that covenants recorded in 1981, but not signed by the owner of the property, did not bind the covenants to the land despite the fact that the owner sold the land subject to "covenants" and "restrictions." *Id.* More specifically, the warranty deeds signed by the owner with reference to a platted subdivision may have ratified the plat but did not expressly bind the land to the unsigned 1981 covenants because the language was "simply generic ... [and] typically included in warranty deeds to create exceptions to the covenants of the warranty deeds." *Id.* Although a non-signing owner may subsequently ratify covenants and thereby bind the land, the Court found no ratification of the covenants in *Birdwood.*

*See Id.* The Court found it significant that the ratification of the plat through references in the deeds did "not show that [the owner also] ratified the Covenants." *Id.*

In the present case the land was owned by Christy Dyer, Dan Dyer and the Trust. Only Christy Dyer, acting in her individual capacity, signed the plat and Dan Dyer and Christy Dyer as trustee for the Trust did not sign the 1996 plat. However, the record reflects that parcels were sold with signatures from Dan Dyer, Christy Dyer and Christy Dyer as trustee with the following language: "Saddlehorn Ranch, Teton County, Idaho, *as per the recorded plat thereof.*" (Emphasis added). The preceding language does not qualify as the generic language used in *Birdwood.* Further, the reference uses the subdivision's lot and block configuration as the legal description to the parcels. By signing deeds and selling lots with reference to the plat Dan Dyer ratified the 1996 plat. Further, Christy Dyer as trustee had full knowledge of the plat and ratified the plat when she signed, in her capacity as trustee, the deeds and sold lots with reference to the plat. This Court holds that Christy Dyer, acting in her individual capacity, did not have the authority to unilaterally bind all the land owners to any dedication through the 1996 plat. However, the other owners, Dan Dyer and the Trust, ratified the 1996 plat by subsequently signing deeds and selling parcels of land with reference to "the recorded plat thereof."

**The district court did not err by failing to consider the "surrounding circumstances" when it found that the Dyers' dedicated the R-lots to the Association.**

■ The district court held that the Dyers retained title to the R–Lots, but that the Association holds an easement for recreational purposes. The district court further held that the Association "is responsible to maintain that easement and any developments thereon, as contemplated by the Declaration of Covenants, Conditions and Restrictions."

■ The elements of public and private common law dedication are the same, requiring "(1) an offer by the owner clearly and unequivocally indicating an intent to dedicate

the land and (2) an acceptance of the offer." *Ponderosa Homesite Lot Owners v. Garfield Bay Resort, Inc.*, 143 Idaho 407, 409, 146 P.3d 673, 675 (2006) (quoting *Armand v. Opportunity Mgmt. Co.*, 141 Idaho 709, 714, 117 P.3d 123, 128 (2005)). "When an owner of land plats the land, files the plat for record, and sells lots by reference to the recorded plat, a dedication of public areas indicated by the plat is accomplished." *Monaco v. Bennion*, 99 Idaho 529, 533, 585 P.2d 608, 612 (1978) (quoting *Smylie v. Pearsall*, 93 Idaho 188, 191, 457 P.2d 427, 430 (1969)). This doctrine protects the interest of purchasers who rely on the value of these public areas. *Id.*

■ The offer for dedication must be clear and unequivocal, thereby indicating the owner's intent to dedicate the land. *Ponderosa Homesite Lot Owners*, 143 Idaho at 409, 146 P.3d at 675 (quoting *Sun Valley Land & Minerals, Inc. v. Hawkes*, 138 Idaho 543, 548, 66 P.3d 798, 803 (2003)). The burden of proof is on the party alleging that the land owner's act or omission manifested an intent to dedicate the land for public use. *State ex rel. Haman v. Fox*, 100 Idaho 140, 146, 594 P.2d 1093, 1099 (1979). "The intent of the owner to dedicate his land to public use must be clearly and unequivocally shown and must never be presumed." *Id.* at 147, 594 P.2d at 1100.

■ "[U]nder Idaho law a dedication, whether express or common law, creates an easement. Moreover, an easement does not divest the servient estate owner of title. [citations omitted] ... Nor does the creation of an easement divest the servient estate owner of the ability to transfer title." *Ponderosa Homesite Lot Owners*, 143 Idaho at 410, 146 P.3d at 676.

■ "In determining the intent to dedicate, 'the court must examine the plat, as well as the surrounding circumstances and conditions of the development and sale of lots.'" *West Wood Investments, Inc. v. Acord*, 141 Idaho 75, 87, 106 P.3d 401, 413 (2005) (quoting *Sun Valley Land And Minerals, Inc. v. Hawkes*, 138 Idaho 543, 548, 66 P.3d 798, 803 (2003)). In *West Wood Investments*, this Court found that an unrecorded

plat did not rise to the level of a common law public dedication. The Court specifically stated that "a general referral to [a] potential common area" does not meet "the requirement of a clear and unequivocal intent to dedicate land for a certain use." *West Wood Investments, Inc.*, 141 Idaho at 87, 106 P.3d at 413. The present case is distinguishable in that Christy Dyer did re-record the original plat in 1996 and continually sold homes with reference to the recorded plat knowing that potential owners would rely on the recorded plat.

The Dyers emphasize the language in the Covenants which consistently states "if any" after the word "common area" as an indication that there was not an intent to dedicate the R–Lots to the Association. The plat labels the lots as "reserved" on the map legend, and they are more specifically labeled as "gravel pit and future recreation lot" and "recreation center." No homeowner's association existed when the Covenants were filed, and it was Christy Dyer who incorporated and created the Association in 1994 thereby making the contemplated homeowner's association a reality. Similarly, Christy Dyer also made any contemplated common areas a reality when she re-filed the plat in 1996. There is no single act in this stream of events which would constitute a common law dedication. However, through several purposeful acts, Christy Dyer took the Covenants, plat and subdivision that the Sykes only contemplated and made them all a reality. Her actions show a clear intent to develop the subdivision as originally contemplated, which includes a dedication of the R-lots to the Association for recreational purposes. She continued to sell lots with reference to the plat, with knowledge that those purchasers would rely on her acts as positive assertions that the common areas were dedicated to the Association. This Court finds that the R-lots were dedicated to the Association and that the Association has a valid easement on the R-lots for recreational purposes.

This Court further finds that the district court did not fail to analyze the "surrounding circumstances" as required by the decision in *West Wood Investments*. It is clear that the district court analyzed every aspect of the

plat recording process and all the events preceding the actual 1996 re-recording of the subdivision plat and the continual sale of parcels with reference to the re-recorded 1996 plat. This Court upholds the district court's finding that the Dyers dedicated the R–Lots for recreational purposes to the Association by re-filing the plat in 1996, incorporating the Association with reference to the covenants in 1994 and subsequently selling land with the knowledge that those buyers would rely on the recorded 1996 plat. The Association holds an easement in the R-lots and the Dyers continue to hold title.

**Neither the Association nor the Dyers are entitled to attorney's fees on appeal.**

The Association and the Dyers make a claim for attorney's fees on appeal under I.C. § 12–121. The Association, like the Dyers, has not presented this Court with any reasonable basis in fact or law to reverse the decision of the district court. This litigation has accomplished absolutely no result that was not contemplated between the parties as early as 1996. The Dyers appealed the district court decision and the Association cross-appealed the district court's decision, and this Court denies all claims of both parties. Therefore, this Court finds that there is no prevailing party on appeal and that neither party is entitled to attorney's fees.

### CONCLUSION

For the foregoing reasons this Court affirms the district court's decision. No costs or attorney's fees are awarded.

Justices BURDICK, J. JONES, HORTON and Justice Pro Tem TROUT, concur.