# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 39445-2011

GUIDO ARMAND and SANDRA ARMAND, )
)
    Plaintiffs/Cross-Respondents, )
)
and )
)
ROBERT SIEGWARTH and SHARRI )
SIEGWARTH, )
)
    Plaintiffs/Appellants/Cross- )
    Respondents, )
)
v. )
)
OPPORTUNITY MANAGEMENT CO., )
INC. )
)
    Defendant/Respondent, )
)
and )
)
EDWARD FELSING and LINDA FELSING, )
EDWARD BLANCHETTE and DEBRA )
BLANCHETTE, and MICHAEL SCHADEL )
and ROSEMARY SCHADEL, )
)
    Defendants/Respondents/Cross- )
    Appellants. )
)

Coeur d'Alene, September 2013 Term

2013 Opinion No. 113

Filed: November 26, 2013

Stephen W. Kenyon, Clerk

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Kootenai County. The Hon. Charles W. Hosack and the Hon. Lansing L. Haynes, District Judges.

The judgment of the district court is <u>affirmed</u> <u>in</u> <u>part</u> and <u>reversed</u> <u>in</u> <u>part</u>.

James M. McMillan, Wallace, argued for appellants Siegwarth.

R. Wayne Sweney, Lukins & Annis, Coeur d'Alene, argued for respondents Schadel and Blanchette.

Michael K. Branstetter, Hull & Branstetter, Wallace, argued for respondents Felsing.

J. Patrick Diener, Feltman Gebhardt Greer & Zeimantz, Spokane, Washington, argued for respondent Opportunity Management Co., Inc.

_____

EISMANN, Justice.

This is an appeal out of Kootenai County from a judgment that dismissed the plaintiffs' claims that they had the right to use parcels of property designated as common areas in a plat that was void because the persons who recorded the plat did not own all of the real property included in the plat and that awarded the plaintiffs an easement across a parcel of land now owned by the cross-appellants. We affirm the judgment of the district court except as to the width of the easement.

## I.
## Factual Background.

In 1980, Michael and Gwen Smith desired to develop real property near Hayden Lake into a subdivision containing seventeen lots. The land was located in two adjoining sections, with the northern part in Section 7 and the southern part in Section 18. The Smiths owned the land in Section 18, but only had an option to purchase the land in Section 7. They had a plat that had been prepared for the proposed subdivision named Berven Bay Terrace (Berven Bay I), but the plat had not yet been recorded.

On May 20, 1981, the Smiths granted deeds of trust to two parcels of the land in Section 18 that had metes-and-bounds legal descriptions corresponding to proposed lots 1 and 2 of the subdivision. The beneficiary of the deeds of trust was a bank that had loaned money to the Smiths, and they built a house on each parcel, which they hoped to sell. The Smiths defaulted on the loans secured by the deeds of trust, and in May 1983 the bank foreclosed and acquired title to the two parcels. The bank sold those parcels the following year.

Kermit and Katherine Petersen and Donald and Violet Klages owned the property included within Berven Bay I that was located in Section 7. They had granted the Smiths an option to purchase that property, but the Smiths did not exercise that option. On June 15, 1984, the Petersens and the Klageses recorded a document declaring the option forfeited for the failure

2

of the Smiths to comply with its terms.  The Petersens and the Klageses did not know that the Smiths had platted the property.

On June 28, 1984, the Smiths sold to The John J. Schafhausen Trust (Schafhausen Trust) three parcels of land in Section 18 that had metes-and-bounds legal descriptions corresponding to proposed lots 3, 4, and 5 of the subdivision.  The plat of Berven Bay I was generally rectangular in shape and situated in a southeast-northwest orientation.  Lot 10 ran along the southeastern boundaries of Lots 1 through 9, and the southern portion of Lot 10 had frontage on Hayden Lake.  The deed to the Schafhausen Trust included the following provision:

> The Grantor hereby agrees that the Lake Frontage contained in Lot 10 of proposed Berven Bay Terrace Subdivision may be used by the Grantee herein and its successors and assigns and by all other owners of lots in proposed Bervens [sic] Bay Terrace Subdivision for access to the lake.

The city approved the plat for Berven Bay I in May 1982, and it was recorded on September 7, 1984.  Two days later, the Smiths quitclaimed to a third party all of their interest in the subdivision, and on March 8, 1985, that person quitclaimed his interest in the subdivision to the Petersens and the Klageses.

On August 21, 1985, the Petersens, the Klageses, and another couple recorded the plat of Berven Bay Terrace II (Berven Bay II), which consisted of all of the land in Berven Bay I except the five parcels that had been sold.  The lots in Berven Bay II were reconfigured from what were the lots in the corresponding part of Berven Bay I.  Berven Bay II has eight lots, and the corresponding area in Berven Bay I had twelve lots.  Lot 8 in Berven Bay II was the same as Lot 10 of Berven Bay I.  The southeastern boundaries of Lots 1 through 5 of Berven Bay II abutted upon Lot 8.  The plat of Berven Bay II stated that Lot 8 was to be owned jointly by all of the lot owners of Lots 1 through 7 in a ratio of 1/7 per lot, and that Lot 8 was for the sole use and enjoyment of the owners of the subdivision.  Eventually, Edward and Debra Blanchette, Michael and Rosemary Schadel, and Edward and Linda Felsing purchased their respective parcels of land which together comprise Lots 1 through 7 of Berven Bay II.  Opportunity Management Co., Inc., had acquired the lots before they were sold to the Blanchettes, the Schadels, and the Felsings.

With respect to the five lots that had been sold in Berven Bay I, Guido and Sandra Armand ultimately acquired Lots 2 and 3 and part of Lot 4, and Robert and Sharri Siegwarth ultimately acquired Lots 1, 5, and part of Lot 4.  Thus, both the Armands and the Siegwarths are

successors in interest to the property (proposed Lots 3, 4, and 5) that was originally purchased by the Schafhausen Trust.

In May 2000, the Armands and the Siegwarths learned that the Blanchettes, the Schadels, and the Felsings were intending to build a dock on the lake frontage in Lot 8 of Berven Bay II. The parties met, and the Armands and the Siegwarths claimed an interest in Lot 8 based upon their contention that what was Lot 8 in Berven Bay II was intended to be common area in Berven Bay I. The other parties rejected that contention.

On July 23, 2002, the Armands and the Siegwarths (Plaintiffs) filed this lawsuit against Opportunity Management Co., Inc., the Felsings, the Blanchettes, and the Schadels (Defendants) seeking the right to use Lot 8, including but not limited to all littoral rights, and the right to use all common areas dedicated in the Berven Bay I plat. The Defendants moved for summary judgment on the ground that the plat of Berven Bay I was void, and the district court granted their motion and dismissed the lawsuit. The Plaintiffs appealed, and this Court held that there were genuine issues of material fact precluding summary judgment. *Armand v. Opportunity Mgmt. Co., Inc.*, 141 Idaho 709, 117 P.3d 123 (2005). We reversed the grant of summary judgment and remanded the case for further proceedings.

The matter was then tried to the district court.[1] Based upon its findings of fact and conclusions of law, it dismissed all of the Plaintiffs' claims except their claim to an easement across Lot 8 for lake access. The Siegwarths appealed and the Blanchettes, the Schadels, and the Felsings cross-appealed.

## II.
### Did the District Court Fail to Properly Apply the Doctrine of the Law of the Case Based Upon this Court's Opinion in the First Appeal?

The Siegwarths contend that the district court failed to properly apply the doctrine of the law of the case. They state, "In the *Armand I* decision, the Supreme Court explicitly stated that 'Armands [and Siegwarths] *have a valid interest* in the areas that are expressly designated as common areas on the BBT[I] plat,' " and they assert that the quoted statement from that decision is the law of the case. We have articulated the doctrine of the law of the case as follows:

---

[1] This case was tried to the Hon. Charles W. Hosack, who entered his findings of fact and conclusions of law, and after his retirement on December 31, 2009, the Hon. Lansing L. Haynes presided over various post-trial motions.

4

[U]pon an appeal, the Supreme Court, in deciding a case presented states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal.

*Swanson v. Swanson*, 134 Idaho 512, 515, 5 P.3d 973, 976 (2000). The quoted statement from the decision in the first appeal does not constitute the law of the case.

The first appeal concerned the district court's grant of a motion for summary judgment dismissing the Plaintiffs' complaint. The district court held that under Idaho Code section 50-1309, the plat of Berven Bay I was invalid because the owners of Lots 1-5, which were sold before the plat was approved by the city or recorded, had not signed the plat. In reversing the grant of summary judgment, we stated as follows:

Armands argue the district judge erred in granting summary judgment against them because the judge erroneously interpreted I.C. § 50–1309. Opportunity asserts that the decision is correct because the BBT plat was not signed by all persons who owned lots at the time it was recorded and, therefore, is void. Idaho Code Section 50–1309 states in part:

The owner or owners of the land included in said plat shall make a certificate containing the correct legal description of the land, with the statement as to their intentions to include the same in the plat, and make a dedication of all public streets and rights-of-way shown on said plat, which certificate shall be acknowledged before an officer duly authorized to take acknowledgments and shall be indorsed on the plat. . . .

The remaining two sections of this statute refer to the dedication or transfer of private roads to the public and the jurisdiction of highway districts over private roads in subdivisions. While the language quoted above is quite broad in its requirements, the provision as a whole appears to relate to dedicating streets and rights-of-way for public use. In order to have a valid dedication, owners must acknowledge their desire to dedicate streets and rights-of-way to the public. It is logical to require property owners to do so, so there is no question of their intent to be bound by the provisions of the plat giving private property over to the public. The plat in this case does not contain any public streets or rights-of-way and thus, it is difficult to see how this statute pertains here. Moreover, none of the lot owners within the plat at the time it was recorded have ever expressed any disagreement with the plat and in fact, fully supported the plat of BBT as it was recorded in 1984. In his affidavit in opposition to summary judgment, Mark Schafhausen stated: "The proposed plat included common areas which I relied upon in agreeing to the purchase price that I paid."

While Opportunity would like to have the BBT plat declared void so that the BBTII plat would take its place, there is no support for that in § 50–1309.

5

Thus, the unilateral actions of subsequent property owners re-platting part of the property into BBTII has no effect on the validity of the BBT plat and those areas designated as common areas. Therefore, Armands have a valid interest in the areas that are expressly designated as common areas on the BBT plat.

*Armand*, 141 Idaho at 714, 117 P.3d at 128.

The version of Idaho Code section 50-1309 that was quoted in *Armand* was not the version that was in effect when the plat of Berven Bay I was approved, signed by the Smiths, and recorded. The city approved the plat in 1982, the Smiths executed the owners' certificate on April 4, 1983, and the plat was recorded on September 7, 1984. The version quoted in *Armand* was not in effect until July 1, 1988.

The version of section 50-1309 that was in effect until 1988 consisted of one paragraph, which stated as follows:

> The owner or owners of the land included in said plat shall make a certificate containing the correct description of the land, with the statement as to their intentions to include the same in the plat, and make a dedication of all streets and alleys shown on such plat, which certificate shall be acknowledged before an officer duly authorized to take acknowledgements and shall be endorsed on the plat. The surveyor or engineer making the survey shall certify the correctness of said plat.

Ch. 429, § 227, 1967 Idaho Sess. Laws 1249, 1322-23.

The version of the statute quoted in *Armand* includes the wording that the owners shall "make a dedication of all *public* streets and rights-of-way shown on said plat," and the decision states that "[t]he remaining two sections of this statute refer to the dedication or transfer of private roads to the public . . . ." *Armand*, 141 Idaho at 714, 117 P.3d at 128 (emphasis added). The word "public" and the two other sections of the statute were not added until 1988. Ch. 175, § 2, 1988 Idaho Sess. Laws 306, 307. We stated in *Armand* that "[t]he plat in this case does not contain any public streets or rights-of-way and thus, *it is difficult* to see how this statute pertains here." *Armand*, 141 Idaho at 714, 117 P.3d at 128 (emphasis added). The version of section 50-1309 in effect when the plat was recorded was not limited to public streets, and the plat did include a street designated as common area.

After stating that it was "difficult" to see how the 1988 version of section 50-1309 applied, we stated:

> Moreover, none of the lot owners within the plat at the time it was recorded have ever expressed any disagreement with the plat and in fact, fully supported the plat

6

of BBT as it was recorded in 1984. In his affidavit in opposition to summary judgment, Mark Schafhausen stated: "The proposed plat included common areas which I relied upon in agreeing to the purchase price that I paid."

*Id*. Owners of land that was included in a plat who did not sign the plat can later ratify it by their conduct. *Saddlehorn Ranch Landowner's, Inc. v. Dyer*, 146 Idaho 747, 751, 203 P.3d 677, 681 (2009).

Finally, the issue in *Armand* was whether the district court erred in granting summary judgment. Our ultimate conclusion was not that Plaintiffs had an interest in the common areas designated in the plat of Berven Bay I. Our conclusion was, "Because genuine issues of material fact exist, the district judge's grant of summary judgment is reversed and the case remanded for further proceedings." *Armand*, 141 Idaho at 716, 117 P.3d at 130. On remand, the district court correctly interpreted our decision. The district court held as follows:

> The Supreme Court was not saying that no trial need be held as to the validity of the BBT I plat, but just that if it were to be determined at trial that BBT I had been fully approved, accepted, and supported by all BBT I lot owners, then the BBT II plat (being a unilateral act of subsequent owners in replatting part of BBT I into BBT II) would not invalidate BBT I common areas.

After the case was remanded for further proceedings, it was discovered that the Smiths did not own any of the platted land located in Section 7, which comprised about 40% of the subdivision. The owners of that land did not know that the Smiths had included their land in the plat, nor did they later ratify the plat. The Siegwarths assert that because the Defendants did not raise in their motion for summary judgment any issue regarding the Smiths' ownership of the platted land in Section 7, "any issues surrounding Smith's ownership of a portion of the property should be deemed waived." The Siegwarths do not cite any authority or provide any logical reason supporting that assertion, and we likewise do not know of any.

### III.
### Did the District Court Err in Holding that the Appellants Did Not Have Any Interest in the Common Areas Designated in the Berven Bay I Plat?

As stated above, the Smiths were not the owners of the real property in Section 7 that was included in the plat of Berven Bay I, which consisted of about 40% of the land included in the plat. The Siegwarths contend that the Smiths should be considered the owners because they had an option to purchase the platted property in Section 7. The city approved the plat in 1982, and

the Smiths executed the owners' certificate on April 4, 1983. On June 15, 1984, the owners of the property in Section 7 recorded a document declaring the Smiths' option forfeited for the failure of the Smiths to comply with its terms. The plat was not recorded until September 7, 1984.

When the Smiths platted the land, executed the owners' certificate, and recorded the plat, Idaho Code section 50-1301(1) defined "owner" as "[t]he proprietor of the land, (having legal title)." Ch. 329, § 1, 1971 Idaho Sess. Laws 1294, 1295.[2] The Smiths never had legal title to the land in Section 7, so they were not owners of the land in Section 7.

In *Allen v. Blaine County*, 131 Idaho 138, 953 P.2d 578 (1998), we held that the definition of "owner" in section 50-1301 meant precisely what it said and that under that definition a leaseholder of the property was not an owner. *Id*. at 141-42, 953 P.2d at 581-82. The Siegwarths do not present any argument that one "having legal title" as is required by section 50-1301(1) would include someone who merely has an option to purchase the real property. In fact, the Siegwarths do not even mention section 50-1301 in their briefs nor do the briefs include the words "legal title" or any argument as to the meaning of that term. They have failed to present any argument or authority that one "having legal title" to real property would include one having an option to purchase the property.

The Siegwarths state, "Only the optionors (the Petersens) would have standing to raise any possible objection to the dedications by Smith of the Section 7 property." They neither cite authority nor provide argument supporting that statement. The Defendants obviously have standing to litigate the removal of a cloud on the title of their real property. *Beal v. Mars Larsen Ranch Corp., Inc.*, 99 Idaho 662, 667, 586 P.2d 1378, 1383 (1978).

The Siegwarths then state that "even if the Respondents somehow received the optionors' standing to object, the optionors acquiesced in the dedications and sales, and, thus, are estopped from revoking the dedication, the District Court's decision is incorrect as a matter of law." The plat of Berven Bay I was recorded on September 7, 1984. Prior to the recording of the plat, the documents relating to an interest in the parcels of land designated in the plat were the following: (a) The two deeds of trust granted by the Smiths to the bank, which were both recorded on May 26, 1981; (b) The two trustee's deeds to the bank after the foreclosure sales, both of which were

---

[2] That definition has not changed, although it is now in subsection (7) of the statute. I.C. § 50-1301 (Supp. 2013).

recorded on May 26, 1983; (c) The bank's warranty deed conveying one of its parcels, which was recorded on May 25, 1984; (d) The warranty deed from the Smiths to The John J. Schafhousen Trust, which was recorded on July 2, 1984; and (e) The bank's warranty deed conveying its other parcel, which was recorded on July 3, 1984. All of those documents contained metes-and-bounds descriptions of the real property involved, and none of them included any reference to the Berven Bay I plat. The district court found: "Siegwarths have introduced no proof that the true owners (Klages and Petersen[s]) of the real property in section 7 ever consented to the recording of the plat" and "[t]here is nothing in the record to show the owners of the ground in section 7 even knew about, much less consented to, Smith's recording the BBT I plat in September 1984." The Siegwarths do not even mention these factual findings by the district court, much less challenge them on appeal.

The plat of Berven Bay I is void. It is axiomatic that one person cannot unilaterally restrict the use of another's land simply by drafting and recording a plat to that land. At all times relevant herein, Idaho Code section 50-1302 provided, "Every owner proposing a subdivision, as defined above [in section 50-1301], shall cause the same to be surveyed and a plat made thereof which shall particularly and accurately describe and set forth all the streets, easements, public grounds, blocks or lots, and other essential information, and shall record said plat." Ch. 429, § 220, 1967 Idaho Sess. Laws 1249, 1320. It was the owner of the real property who could plat the property, not someone who merely had an option to purchase the property. Idaho Code section 50-1309 provided that the "owner or owners of the land included in said plat" were to make a certificate "containing the correct description of the land." Ch. 429, § 227, 1967 Idaho Sess. Laws 1249, 1322. Section 50-1302 required that the plat "particularly and accurately describe and set forth all the streets, easements, public grounds, blocks or lots, and other essential information." Ch. 429, § 220, 1967 Idaho Sess. Laws 1249, 1320. The plat to Berven Bay I included an "Owners Certification" signed by the Smiths. That certification was a false representation because they did not own all of the real property included in the plat. Obviously, the essential information required by section 50-1301 would include that the person platting the land did not own it.

The Berven Bay I plat was approved by the city as one plat. It was not approved as two separate plats—one for the property owned by the Smiths and another for the property they did

9

not own. Only seven of the seventeen lots in the Berven Bay I plat did not include property in Section 7.

A valid plat must be executed by the owner(s) of the real property included in the plat. *Allen*, 131 Idaho at 142, 953 P.2d at 582. Because the Smiths did not own all of the property included in the plat, and the owners of the property not owned by the Smiths did not ratify the plat, the Berven Bay I plat is void. Because the plat is void, it could not dedicate any land for the use or benefit of anyone. "A dedication is only valid if it is made by someone who owns the land without qualification." *Saddlehorn*, 146 Idaho at 751, 203 P.3d at 681. Because the plat is void, it did not grant the Siegwarths any interest in the land included in the plat. Although the owner of land can, by means of a plat, make a common law dedication of platted land for private use by the owners of the platted land, *Ross v. Dorsey*, 154 Idaho 836, 842-43, 303 P.3d 195, 201-02 (2013), there cannot be a common law dedication of land to a restricted class of individuals who own unplatted land, *Coward v. Hadley*, 150 Idaho 282, 288-89, 246 P.3d 391, 397-98 (2010). Therefore, the district court did not err in holding that the Siegwarths did not have any interest in the common areas designated in the plat of Berven Bay I.

## IV.
### Did the District Court Err in How It Used Information Gained from a Site Visit?

At the conclusion of the trial, the Siegwarths' trial attorney encouraged the district court to make a site visit to the property, and the court's opinion indicates that it did visit the property. The opinion, which was issued on June 22, 2007, mentions "the day of the visit to the property in late April," and there are various references in the opinion to the topography of the land.

The Siegwarths contend that the court improperly used the information it obtained during that site visit. They allege that because the information gained from the site visit "was 'considered as evidence or [had] the effect of supplying evidence independent of, or in addition to, that taken in the course of the trial, or supplanted evidence adduced,' the site visit was improper and amounts to reversible error." (Quoting from *Lobdell v. State Bd. of Highway Dirs.*, 89 Idaho 559, 568, 407 P.2d 135, 140 (1969)). The Siegwarths do not cite to anything in the record supporting their allegation. Because the Siegwarths do not support their allegation with any citations to the record, we will not consider it on appeal. *VanderWal v. Albar, Inc.*, 154 Idaho 816, 822, 303 P.3d 175, 181 (2013).

10

# V.
## Did the District Court Err in Holding that the Appellants Had an Easement across Lot 8 of Berven Bay II and in Defining the Location, Width, and Purpose of the Easement?

The deed from the Smiths to The John F. Schafhausen Trust included the following provision:

> The Grantor hereby agrees that the Lake Frontage contained in Lot 10 of proposed Berven Bay Terrace Subdivision may be used by the Grantee herein and its successors and assigns and by all other owners of lots in proposed Bervens [sic] Bay Terrace Subdivision for access to the lake.

The district court held that the provision was ambiguous, that the intent was to grant an easement for lake access across what is now Lot 8 of the Berven Bay II subdivision, and that the easement is four feet wide with a secondary easement two feet wide on each side for maintenance. Both sides challenge the court's findings regarding the easement.

The Siegwarths agree that the provision is ambiguous, but they contend that the district court erred in finding that they had only an easement in Lot 8. Lot 8 corresponds to Lot 10 of the Berven Bay I plat. That plat stated, "All areas designated common areas as shown hereon are to be owned jointly by all lot owners in a ratio of 1/17 per lot and that all common areas are for the sole use and enjoyment of the owners of this subdivision along with use for utility purposes." Although the lot in question was not designated as common area on the plat, the Siegwarths argue that Smith's testimony "makes it *clear* that his original intent was to dedicate Lot 10 for the use of all of the lot owners of the (then proposed) BBT I plat." Because the plat is void, it did not dedicate any property to the owners of land included in the plat, regardless of the Smiths' intent.

The Siegwarths next contend that even if their predecessor in interest was granted only an easement in Lot 8, the easement should be over the entirety of the lot, rather than just a path across it. The deed states that the grant is "for access to the lake." The district court found that "[t]he deed to the John Schafhausen Trust for Lots 3, 4, and 5 expressly states that there is an easement for lake access." "An easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner." *Akers v. D.L. White Constr., Inc.*, 142 Idaho 293, 301, 127 P.3d 196, 204 (2005). The deed to the trust does not specify the width or location of the easement. "A grant indefinite as to width and location

must impose no greater burden than is necessary." *Conley v. Whittlesey*, 133 Idaho 265, 270, 985 P.2d 1127, 1132 (1999). The Siegwarths do not point to any evidence showing that the entire area of Lot 8 is necessary for them to access the lake.

On their cross-appeals, the Felsings, the Blanchettes, and the Schadels (Cross-Appellants) argue that the deed to the Schafhausen Trust did not grant an easement across Lot 8. They argue that because the deed stated "the Lake Frontage contained in [Berven Bay II Lot 8] . . . may be used to the Grantee . . . for access to the lake," the deed only grants the right to use lake frontage, which is simply a line with length but not width. According to them, the deed only granted the right to walk around Lot 8 on its waterward side, not to cross over Lot 8.

No specific words are necessary to create an express easement, but there must be clear intention to establish a servitude. *Coward*, 150 Idaho at 287, 246 P.3d at 396. The district court found that "lake levels of Hayden Lake vary widely over the year, and, can vary significantly from year to year." In the spring, much of Lot 8 is inundated, and by the end of the summer the dock constructed by the Cross-Appellants is resting on the lakebed even though it extends beyond the waterward boundary of Lot 8. If the provision in the deed to the Schafhausen Trust were only intended to grant the right to walk around Lot 8 on its waterward side, the provision would be meaningless. The Smiths would have been granting permission to walk on the waterward side of the lot on land that the Smiths did not own in order to provide access to the lake. During the early part of the year, they would be walking in the lake in order to obtain access to the lake. During the latter part of the year, they would be walking on the dry or muddy lakebed. The Schafhausen Trust did not need the Smiths' permission to walk on the lakebed, whether it was covered with water or dry. The district court did not err in holding that the most reasonable construction of the deed to the Schafhausen Trust was that it granted an easement across Lot 8 for access to the lake.

The Cross-Appellants challenge the width of the easement. The district court granted a four-foot-wide easement, and the Cross-Appellants contend that it should be no wider than three feet. There was testimony of part of an existing path that is four and one half feet wide and part that is three feet wide, and that trying to build a three-foot-wide path down a slope to the existing path would not be feasible. The Cross-Appellants have not shown that the district court erred in granting an easement that was four feet in width.

The Cross-Appellants also challenge the district court's grant of a secondary easement for trail maintenance that is two feet wide on each side of the primary easement. They contend that a secondary easement for that purpose is not supported by the evidence. The Siegwarths do not point to any evidence supporting the need for a secondary easement. They simply state, "However, given that the evidence shows that the parties intended for a broad use of Lot 10 on the part of the BBT I landowners, there is no showing that the District Court's express reservation is unreasonable, or not supported by the evidence on the record." Because the Siegwarths have not pointed to any evidence in the record supporting the need for a secondary easement for trail maintenance, we reverse that part of the judgment.

Finally, the Siegwarths contend that the district court erred by failing to define "lake access." Specifically, they want to present evidence as to whether that term includes the right to construct a dock. There is no indication in the deed to the Schafhausen Trust that it was granted littoral rights. The meaning of the term is self-explanatory, and it simply means access to the lake, which, under the facts in this case, would mean pedestrian access. It did not purport to grant anything more.

Lot 8 is located on one side of a cove, and the court found it was "unbuildable." The court described it as follows, "There are no sandy beaches; the area is shaded by trees; and, as the term 'cove' suggests, the topography of the ground (a relatively flat area, at the bottom of a narrow, deep ravine) limits activities." The court wrote that "witnesses, including Smith, testified that the area varied between a wilderness of tangled brush with a creek; an area of swamp like conditions; or under the waters of the lake itself." The court found that "[t]he waters in the cove are shallow, and would be available for motor boat use only to an extremely careful boater even in high water." It further found that Smith "intended Lot 10 to serve as a means for the residential lot owners to be able to claim some sort of right of access to the lake front on Lot 10, however marginal, or even impractical, that might happen to be at any given time of the year." The utility of the grant of an easement for lake access to the Schafhausen Trust is substantially limited by the topography of the area, but that fact does not entitle the Siegwarths to greater rights than were granted in the deed to the Trust.

## VI.
### Did the District Court Err in Bifurcating the Equitable and Legal Issues for Trial?

13

The Siegwarths contend that the district court erred in bifurcating the equitable and legal issues for trial. The court ruled that conflicting claims to rights of title in the real property would be tried first and then claims for damages. The decision of whether to order separate trials for any claims or issues is left to the sound discretion of the trial court. *Rueth v. State*, 103 Idaho 74, 80, 644 P.2d 1333, 1339 (1982). The Siegwarths contend that the court abused its discretion because "should the District Court's judgment be reversed, 'a significant time will have elapsed between the bifurcated halves of the action,' and the damages portion will 'require duplication of proof concerning the land.' " (Quoting from *Rueth*, *id*.)

Even assuming that the facts would support a finding that the district court abused its discretion in bifurcating the trial of the equitable and legal issues, the Siegwarths do not explain how reversing that decision now would lessen the time lapse between the trial of the equitable issues (which has already occurred) and the future trial of the legal issues (assuming one were necessary).

The Siegwarths also argue that "the bifurcation led directly to the failure to rule with regard to Appellant's request for a jury trial." Again, it is difficult to understand how this argument justifies any relief. The Siegwarths do not contend that they were entitled to a jury trial on any of the issues already tried. They had amended their complaint to allege a claim for damages, which the court dismissed based upon its determination of the equitable issues. Based upon the court's decision after that trial, there are no further issues to try.

## VII.
## Is Either Party Entitled to an Award of Attorney Fees on Appeal?

The Siegwarths seek an award of attorney fees pursuant to Idaho Code §§ 12-120, 12-121, and 12-123 "on the grounds that Respondents' defense to this this action was, in whole or in part, not supported in fact or warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law." "A party is entitled to attorney fees on appeal only if fees are authorized by statute, contract, or court rule." *Kootenai County v. Harriman-Sayler*, 154 Idaho 13, 20, 293 P.3d 637, 644 (2012). A general assertion to an award of attorney fees under Idaho Code section 12-120 is insufficient to request attorney fees on appeal, where the specific portion of the statute relied upon is not identified and, if necessary, supported by argument as to why it is applicable. *Stephen v. Sallaz & Gatewood, Chtd*., 150

14

Idaho 521, 529-30, 248 P.3d 1256, 1264-65 (2011). The Siegwarths did not do so. In order to be eligible for an award of attorney fees under Idaho Code section 12-121, the party must be the prevailing party on appeal. *VanderWal*, 154 Idaho at 824, 303 P.3d at 183. The Siegwarths are not the prevailing party on appeal. Finally, Idaho Code section 12-123 does not apply on appeal. *Tapadeera, LLC v. Knowlton*, 153 Idaho 182, 189, 280 P.3d 685, 692 (2012). Therefore, the Siegwarths are not entitled to an award of attorney fees on appeal.

The Defendants request an award of attorney fees on appeal pursuant to Idaho Code section 12-121. An award of attorney fees under that statute will be awarded to the prevailing party on appeal only when this Court is left with the abiding belief that the entire appeal was brought, pursued, or defended frivolously, unreasonably, or without foundation. *McGrew v. McGrew*, 139 Idaho 551, 562, 82 P.3d 833, 844 (2003); *Benz v. D.L. Evans Bank*, 152 Idaho 215, 231-32, 268 P.3d 1167, 1183-84 (2012). Because the Defendants prevailed only in part on their cross-appeal, they are not the prevailing party on appeal. *Tapadeera,* 153 Idaho at 189, 280 P.3d at 692. Therefore, the Defendants are not entitled to an award of attorney fees on appeal.

## VIII.
### Conclusion.

We affirm the judgment of the district court with the exception of the grant of a secondary easement for trail maintenance, which we reverse. Because both sides prevailed in part, we do not award costs or attorney fees on appeal.

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**