117 P.3d 123

**Guido ARMAND and Sandra Armand, husband and wife, and Robert Siegwarth and Sharri Siegwarth, husband and wife, Plaintiffs–Appellants,**

v.

**OPPORTUNITY MANAGEMENT CO., INC., a Washington corporation; Edward Felsing and Linda Felsing, husband and wife, Edward Blanchette and Jane Doe Blanchette, husband and wife, and Michael Schadel and Rosemary**

Schadel, husband and wife, John Does I–II and Jane Does II–III and any other person or entity claiming an interest in the following parcels of real property located in the County of Kootenai, State of Idaho, Lot 10, Block 1, Berven Bay Terrace, according to the plat thereof recorded in Book "F" of Plats at page 138, Records of Kootenai County, Idaho and all Common Areas Designated on the plat of Berven Bay Terrace, according to the plat thereof Recorded in Book "F" of Plats at page 138, Records of Kootenai County, Idaho, Defendants–Respondents.

Edward Felsing and Linda Felsing, husband and wife, Cross Claimants–Respondents,

v.

Opportunity Management Company, Inc., a Washington corporation, Cross Defendant–Respondent.

Michael Schadel and Rosemary Schadel, husband and wife, and Edward Blanchette and Debra Blanchette, husband and wife, Cross Claimants–Respondents,

v.

Opportunity Management Co., Inc., a Washington corporation, Cross Defendant–Respondent.

Michael Schadel and Rosemary Schadel, husband and wife, and Edward Blanchette and Debra Blanchette, husband and wife, Counterclaimants–Respondents,

v.

Guido Armand and Sandra Armand, husband and wife, and Robert Siegwarth and Sharri Siegwarth, husband and wife, Counterdefendants–Appellants.

No. 30197.

Supreme Court of Idaho, Boise, April 2005 Term.

June 17, 2005.

Amaro Law Office, Coeur d'Alene, for appellants. Rami Amaro argued.

Lukins & Annis, P.S., Coeur d'Alene, for respondents Schadel and Blanchette. Mischelle R. Fulgham argued.

Feltman, Gebhardt, Greer & Zeimantz, P.S., Spokane, Washington, for respondent Opportunity Management Co., Inc. Lisa J. Dickinson argued.

Hull & Branstetter, Chtd., Wallace, for respondent Felsing. Michael K. Branstetter argued.

TROUT, Justice.

This is a quiet title action involving a subdivision. Appellants, Guido and Sandra Armand and Robert and Sharri Siegwarth, appeal the district judge's grant of summary judgment in favor of Respondents, Opportunity Management Co. Inc., (Opportunity), Michael and Rosemary Schadel, Edward and Debra Blanchette, and Edward and Linda Felsing. Armands and Siegwarths sought to establish an ownership interest in what had been denominated as common area in a subdivision.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1980, Michael and Gwen Smith were the owners of a large parcel of land near Hayden Lake, Idaho, described as Lot 35 of Wright's Park Addition. Smiths desired to develop the property into a subdivision called Berven Bay Terrace (BBT). The proposed BBT plat divided the property in 17 lots together with additional areas shown as common areas. The BBT plat was circulated among city officials for several years and was approved by the city council and county surveyor in 1982. Smiths executed the owners' certificate of dedication in 1983. The county treasurer and state health department approved the plat in 1984. Smiths built a home on Lot 1 and another home on Lot 2 of BBT. In May of 1984, Siegwarths' predecessor in title purchased Lot 1. In July of 1984, Armands' predecessor in title purchased Lot 2. Also in July of 1984, Smiths sold several vacant subdivision lots to the John J. Schafhausen Trust. All of those purchasers were aware of the BBT plat, even though it had not yet been recorded. The warranty deed to the John J. Schafhausen Trust also specifically provided:

> The Grantor hereby agrees that the Lake Frontage contained in Lot 10 of proposed Berven Bay Terrace Subdivision may be used by the Grantee herein and its successors and assigns and by all other owners of lots in proposed Bervens [sic] Bay Terrace Subdivision for access to the lake.

The Lot 10 referred to in the deed is shown on the BBT plat as simply one of the platted lots without any designation on the plat that it is also common area. On September 7, 1984, the BBT subdivision plat was recorded.

During 1985, Smiths suffered financial difficulties and the remaining unsold lots were transferred to Kermit and Katherine Petersen and Donald and Violet Klages. The deeds to Petersens and Klages conveyed all of the Smiths' original interest in all properties involved in this case (Lot 35 of Wright's Park Addition), including the common areas and the lots that had already been sold to the John J. Schafhausen Trust and the predecessors in title to Armands and Siegwarths. Petersens, Klages and another couple, James and Margie Hedberg, then re-platted several lots into larger lots in order to form Berven Bay Terrace Two (BBTII). The plat for BBTII was recorded on August 21, 1985. Although the BBTII plat did not include the lots that had already been sold to the John J. Schafhausen Trust and the predecessors in

title to Armands and Siegwarths, it did include certain other parcels from BBT, as well as Lot 10 and several areas that had been marked "common areas" on the BBT plat. In 1990, Siegwarths purchased Lot 1 and in 1991, Armands purchased Lot 2. Opportunity purchased the property within BBTII from Petersens, Klages and Hedburgs. Opportunity then sold portions of the property to Schadels, Blanchettes and Felsings.

In July 2002, Armands and Siegwarths (collectively referred to hereafter as Armands) filed suit seeking to establish their ownership interest in Lot 10 and the common areas. Eventually, Felsings, Schadels and Blanchettes filed motions for summary judgment and Opportunity joined in the motions (collectively referred to hereafter as Opportunity). Armands then filed a motion for leave to amend the first amended complaint but the motion was denied. In opposition to the motions for summary judgment, Armands filed several affidavits. Opportunity moved to strike many portions of Armands' affidavits and the district judge agreed, striking much of those affidavits. The district judge thereafter granted the motions for summary judgment and dismissed all claims with prejudice. The district judge also awarded Opportunity attorney fees. Armands appealed.

## II.

### STANDARD OF REVIEW

■ In an appeal from a grant of summary judgment, this Court's standard of review is the same as the district court's standard in ruling upon the motion. *Thomson v. Lewiston,* 137 Idaho 473, 475–76, 50 P.3d 488, 490–91 (2002). This Court reviews the record before the district court, including the pleadings, depositions, admissions and affidavits, if any, to determine de novo whether, after construing the facts in the light most favorable to the nonmoving party, there exist any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *Tusch Enters. v. Coffin,* 113 Idaho 37, 40, 740 P.2d 1022, 1026 (1987). *See also,* I.R.C.P. 56(c).

## III.

### ANALYSIS

#### A. Motion for Leave to Amend

Armands argue the district judge erred in denying the motion for leave to amend the first amended complaint because the proposed amendment merely sought to add new plaintiffs who would assert the same claim as the original plaintiffs and add additional claims that arose out of the same transactions and occurrences. Opportunity argues the district judge did not abuse his discretion in denying the motion for leave to amend the first amended complaint because the motion was untimely and prejudicial.

■ "A trial court's decision to deny an amendment to pleadings is reviewed by this Court under an abuse of discretion standard." *Baxter v. Craney,* 135 Idaho 166, 169, 16 P.3d 263, 266 (2000). It appears that to the extent the amendment sought to add new plaintiffs, it was unnecessary. The proposed new plaintiffs were already parties because they met the criteria of being a John Doe or Jane Doe claiming an interest in the real property described in the original and first amended complaints. It is difficult to see how simply listing them by name, as opposed to "Does," is prejudicial.

As to the proposed additional claims, the district judge denied the motion to amend because of the closeness of the upcoming trial and the pending motion for summary judgment. Since this case is being remanded, the prejudice articulated by the district judge may no longer be a factor and it would be appropriate to reconsider the motion to amend.

#### B. Motions to Strike

Opportunity filed motions to strike most of the statements in the affidavits filed by Armands in opposition to Opportunity's motion for summary judgment. We find it unnecessary to analyze each of the arguments and rulings made, as even with the stricken portions eliminated, there are still sufficient statements in the affidavits to create genuine issues of material fact. Thus, we will simply address those statements in the next section

as they relate to the summary judgment rulings.

## C. Motion for Summary Judgment

The motion for summary judgment involved three separate issues: statutory dedication, common law dedication and several types of easements.

*Statutory Dedication Under Idaho Code Section 50–1309*

■ Armands argue the district judge erred in granting summary judgment against them because the judge erroneously interpreted I.C. § 50–1309. Opportunity asserts that the decision is correct because the BBT plat was not signed by all persons who owned lots at the time it was recorded and, therefore, is void. Idaho Code Section 50–1309 states in part:

> The owner or owners of the land included in said plat shall make a certificate containing the correct legal description of the land, with the statement as to their intentions to include the same in the plat, and make a dedication of all public streets and rights-of-way shown on said plat, which certificate shall be acknowledged before an officer duly authorized to take acknowledgments and shall be indorsed on the plat. . . .

The remaining two sections of this statute refer to the dedication or transfer of private roads to the public and the jurisdiction of highway districts over private roads in subdivisions. While the language quoted above is quite broad in its requirements, the provision as a whole appears to relate to dedicating streets and rights-of-way for public use. In order to have a valid dedication, owners must acknowledge their desire to dedicate streets and rights-of-way to the public. It is logical to require property owners to do so, so there is no question of their intent to be bound by the provisions of the plat giving private property over to the public. The plat in this case does not contain any public streets or rights-of-way and thus, it is difficult to see how this statute pertains here. Moreover, none of the lot owners within the plat at the time it was recorded have ever expressed any disagreement with the plat and in fact, fully supported the plat of BBT as it was recorded in 1984. In his affidavit in opposition to summary judgment, Mark Schafhausen stated: "The proposed plat included common areas which I relied upon in agreeing to the purchase price that I paid."

■ While Opportunity would like to have the BBT plat declared void so that the BBTII plat would take its place, there is no support for that in § 50–1309. Thus, the unilateral actions of subsequent property owners re-platting part of the property into BBTII has no effect on the validity of the BBT plat and those areas designated as common areas. Therefore, Armands have a valid interest in the areas that are expressly designated as common areas on the BBT plat.

*Common Law Dedication*

■ Even if Opportunity prevailed on its statutory dedication argument, Armands have also argued that there has been a common law dedication of the common areas and Lot 10 as well. Because the BBT plat does not designate Lot 10 as a common area, Armands must prevail on the common law dedication theory in order to claim an interest in Lot 10.

■ "Dedication is essentially the setting aside of real property for the use or ownership of others." *Sun Valley Land and Minerals, Inc. v. Hawkes*, 138 Idaho 543, 548, 66 P.3d 798, 803 (2003). "Idaho recognizes common law dedication of land both for public, as well as for private use." *Id.* "The elements of a common law dedication are (1) an offer by the owner clearly and unequivocally indicating an intent to dedicate the land and (2) an acceptance of the offer." *Id.* (citing *Worley Highway Dist. v. Yacht Club*, 116 Idaho 219, 224, 775 P.2d 111, 116 (1989)). "The offer to dedicate may be made in a number of ways, including the act of recording or filing a subdivision plat depicting the specific areas subject to dedication, so long as there is a clear and unequivocal indication the owner intends to dedicate the land as depicted. In determining whether the owner intended to offer the land for dedication, the court must examine the plat, as well as 'the surrounding circumstances and conditions of

the development and sale of lots.'" *Id.* (quoting *Dunham v. Hackney Airpark, Inc.,* 133 Idaho 613, 616, 990 P.2d 1224, 1226 (Ct. App.1999)) (citation omitted).

Applying the doctrine to this case, element one requires Smiths to have made an offer that clearly and unequivocally indicated their intent to make a private dedication of Lot 10. The BBT plat itself visibly marks the boundaries of Lot 10. Lot 10 is at least three times larger than any other lot on the plat and it provides an access route to the lake from the other lots. The record also contains a warranty deed from Smiths to the John J. Schafhausen Trust that explicitly discusses the right of the grantee and all other owners of lots in the BBT subdivision to use Lot 10 for access to the lake. Furthermore, Michael Smith's affidavit provides additional evidence that an offer to dedicate Lot 10 was made. Smith testified:

> During the process of developing the property, I sold a part of the land which ended up being purchased by Mark Schafhausen and by his father, John Schafhausen. Prior to the Schafhausens purchasing the property, . . . I told them that my plan was for [lot 10] of the development [to] be a commonly owned lot. I envisioned the lot as being a cornerstone of the Berven Bay development, providing lake access for all lot owners, as well as boat docks, a swimming area and a picnic area. I told them that no development was to occur on [lot 10], that it was unbuildable, and that I had every intention of [lot 10] being a common area in the Berven Bay One development. This was my intention for the development. . . . I left a corridor between [lot 9 and 11], as a way for the owners to access [lot 10].

This evidence is ample to raise a genuine issue of material fact as to whether Smiths clearly and unequivocally made an offer indicating their intent to privately dedicate Lot 10 for use as beach access by all lot owners in BBT.

The second element of a common law dedication requires the offer to be accepted. An offer of dedication is sufficiently accepted when the offer is acted upon and lots are purchased with reference to the plat that was filed by the offeror. *Boise City v. Hon,* 14 Idaho 272, 280, 94 P. 167, 169 (1908). An owner's representations that affect the sale of lots should also be considered. *Id.* at 279, 94 P. at 169. A portion of Mark Schafhausen's affidavit (Mark Schafhausen is Armand's predecessor in title) provides:

> Prior to purchasing my home on Lot 2, I contacted Michael Smith regarding the development and lake access via [Lot 10]. . . . I purchased Lot 2 relying on having [Lot 10] as a common area jointly owned for recreational use and for lake access. . . . I reviewed the proposed plat for Berven Bay One prior to purchasing Lot 2. I relied upon this, . . . in making the decision to purchase.

The lots in this case were obviously purchased. It also appears that the private dedication in this case was accepted because the description of the lots in the deeds match the size of, and conform with, the layout of the BBT plat that was filed after several lots were purchased. *See Pullin v. Victor,* 103 Idaho 879, 882, 655 P.2d 86, 89 (Ct.App.1982) (holding it may be inferred that the lots in a subdivision were sold in reference to the plat of the subdivision based on proof of a sale between parties). Since all reasonable inferences from the record are to be drawn in favor of Armands, the district judge erred in granting summary judgment. There are genuine issues of material fact as to whether a common law dedication occurred and therefore, the district judge's order granting summary judgment is reversed.

*Easements*

Although Armands argue they have some type of easement in certain lands located in BBT, they did not cite any authority to support their argument. "We will not consider issues cited on appeal that are not supported by propositions of law, authority or argument." *Hei v. Holzer,* 139 Idaho 81, 88, 73 P.3d 94, 101 (2003).

### D. Attorney Fees

The district judge awarded Opportunity attorney fees pursuant to I.C. § 12–121, finding that it was unreasonable for Armands to pursue this case after the hearing on the

motion to amend. Because we are reversing the district judge's order granting summary judgment, we also vacate the award of attorney fees.

Opportunity argues it is entitled to attorney fees on appeal pursuant to I.C. § 12–121. Attorney fees on appeal are appropriate under I.C. § 12–121 when this Court is "left with an abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation." *Durrant v. Christensen,* 117 Idaho 70, 74, 785 P.2d 634, 638 (1990). Given the result of this appeal, Opportunity is not entitled to an award of attorney fees on appeal.

## IV.

### CONCLUSION

Because genuine issues of material fact exist, the district judge's grant of summary judgment is reversed and the case remanded for further proceedings. The award of attorney fees is vacated. We award costs on appeal to Armands.

Chief Justice SCHROEDER and Justices EISMANN, BURDICK and JONES concur.