# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 39152

| | |
|---|---|
| ALAN G. ROSS, a single man; LARRY R. BROWN, a married man as to his sole and separate property; MICHAEL R. BROWN and NANCY B. MURPHY, husband and wife,  )<br><br>Plaintiffs-Respondents,  )<br><br>v.  )<br><br>TOMMY A. DORSEY and ERIN T. DORSEY, husband and wife,  )<br><br>Defendants-Appellants,  )<br><br>and  )<br><br>THE ESTATES OF F.M. HARKER and GLADYS L. HARKER; BANK OF THE CASCADES, dba FARMERS & MERCHANTS BANK, an Oregon corporation doing business in the State of Idaho; BANNER BANK, a Washington corporation doing business in the State of Idaho; and any and all other claimants in and to that common beach area being approximately 20 feet wide and 132.87 feet long and consisting of all that property lying between the shore of Priest Lake and the West boundary of Lot 1 Steamboat Bay Lots according to the Plat thereof as recorded on February 21, 1966, in the records of Bonner County, Idaho, Book 2 of Plats, Page 125, located in Government Lot 5, Section 27, Township 60 North, Range 4 West, Boise Meridian, Bonner County, Idaho,  )<br><br>Defendants.  )  | Boise, June 2013 Term<br><br>2013 Opinion No. 75<br><br>Filed: June 20, 2013<br><br>Stephen W. Kenyon, Clerk |

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County.  Hon. Steven C. Verby, District Judge.

1

The judgment of the district court is <u>affirmed.</u>

Finney Finney & Finney, PA, Sandpoint, for appellants. John A. Finney argued.

Featherston Law Firm, Chtd., Sandpoint, for respondents. Brent C. Featherston argued.

———————————

J. JONES, Justice.

This is a dispute over a strip of beachfront property adjacent to a Bonner County subdivision. The appellants, Tommy and Erin Dorsey, contend that the beachfront property was conveyed to them when they bought Lot 1, which is adjacent to the beach. The Respondents, who own the other lots in the subdivision, contend that the beachfront property was dedicated to the use and benefit of all eight lots in the subdivision. The district court agreed with Respondents, and held that the property was privately dedicated as an easement benefitting all of the subdivision lots. The Dorseys timely appealed and we affirm.

## I.
## FACTUAL AND PROCEDURAL HISTORY

The Steamboat Bay Lots subdivision is located immediately east of Priest Lake in Bonner County. On February 17, 1966, F.M. Harker and Gladys L. Harker filed a subdivision plat for Steamboat Bay Lots with Bonner County (the Plat). The Plat shows eight lots extending out horizontally in a straight line from the east side of the lake, with Lot One closest to the lake and Lot Eight farthest away. To the south of the lots is a private road, and to the west is the beach and then the lake. The property involved in this dispute is depicted on the Plat as a thin strip of land, approximately twenty feet in width, between the east side of the lake and the subdivision lots (the Buffer Strip). Although the Plat denotes the lot boundaries with solid lines, the northern and southern ends of the Buffer Strip are marked with dashed lines that extend from Lot 1 to the shoreline.

The Plat contains an "Owner's Certification," which states:

KNOW ALL MEN BY THESE PRESENTS that F.M. HARKER and GLADYS L. HARKER, his wife, certify that they are the owners of the land embraced by the herein plat of **STEAMBOAT BAY LOTS** in Gov't Lot 5, Section 27, T60N, R4W, B.M., Bonner Co., Idaho and had the same platted into lots as shown on the herein plat, the boundaries of which are more specifically described as . . . .

2

> It is the intent of the Owners that lot 1 and the 20-foot private road as shown on the herein plat shall include the lands lying between the side lines produced to the mean-high-water-line of Priest Lake.
>
> The use of the 20-foot Private Road as shown on the herein plat is hereby dedicated to the adjacent lot owners. Access to public road cannot be guaranteed.

The Board of Commissioners of Bonner County accepted and approved the Plat on February 21, 1966.

On the same day the Plat was approved, the Harkers conveyed Lot One to R.G. and Nitella Wright by warranty deed (the Deed). The Deed described the conveyance as follows:

> Lot ONE (1) Steamboat Bay Lots, a platted sub-division of Government Lot Five in Section 27, Township 60 North, Range 4 West Boise Meridian.
>
> It is specifically understood that the grantors reserve, as a common beach for all owners in said plat, that certain tract and beach lying between the mean high water line and the West boundary line of said Lot One. Said reserved beach being a tract approximately 20 feet wide between the waters of Priest Lake and the West boundary of the above described Lot One, and 132.87 feet in length.

In October of 1999, Lot One and Lot Two were conveyed by quitclaim deed to the Dorseys. That deed indicated the conveyance was subject to the "terms, provisions, covenants . . . and restrictions" contained in the Deed. Through a series of conveyances, the Respondents acquired the remaining lots in the subdivision—Larry Brown owns Lots Three and Four, Alan Ross owns Lots Five and Six, and Michael and Nancy Murphy own Lots Seven and Eight.

The Respondents filed their Complaint for Quiet Title on May 26, 2009, and later filed an Amended Complaint for Quiet Title on September 13, 2010.[1] In the amended complaint, the Respondents alleged that, "[t]he language of the Plat of Steamboat Bay Lots and [the Deed] have created a cloud on title as to right, title and ownership" of the Buffer Strip. They thus sought "a judgment of quiet title in and to the [Buffer Strip] area pursuant to Idaho Code, Title 6, Chapter 4 et seq. as against the [Dorseys] and [a determination] that said . . . area is appurtenant to the ownership of all the Steamboat Bay Lots." The Dorseys filed an Answer, Counterclaim, and Cross-Claim on July 14, 2009, and an Amended Answer and Counterclaim on December 16, 2010. In these, the Dorseys alleged:

---

[1] The complaint was amended "upon discovery that Banner Bank and other lenders may have held a security interest in the common beachfront property." Banner Bank filed an answer below, but did not participate in the trial. Bank of the Cascades did not respond to the amended complaint and a default judgment was entered against it.

There is no "Common Beach." The Plat language and the conveyances language does not create any right, title, claim, or interest in the Plaintiffs. All right, title, claim, and interest in the real estate at issue is owned by the DORSEYS, solely, not in common with other owners, third parties, or the Plaintiffs.

The Respondents moved for summary judgment, claiming that the "Dorseys held no fee title interest in the beachfront property, as it was specifically excluded from the initial conveyance from Harker to Wright, Dorsey's immediate predecessor in interest." The district court agreed and granted summary judgment as to that issue alone, and accordingly ruled that the "Dorseys hold no fee simple interest in the beachfront property."

A bench trial was held on June 27 and 28, 2011. At trial, when asked about the Deed and its reservation of the Buffer Strip, Ms. Wright testified that she initially had no knowledge of the reservation and that "I think—I don't remember if we talked to Harkers or not. You know it's 45 years ago. You kind of can't remember. I don't remember talking to them about it. I guess we just assumed that's the way it was." However, with respect to the Plat, a surveyor who examined the property testified that the north and south lines of Lot One "would extend . . . to the original high water" mark, i.e., through the Buffer Strip. Both the Dorseys and the Respondents testified at trial regarding their use of the Buffer Strip, and that testimony conflicted. For example, where Respondent Ross testified that he walked his dog in the Buffer Strip "routinely," Mr. Dorsey testified that he had "[n]ever [i]n 12 years" seen Ross there.

In a decision announced from the bench on June 30, the district court held that the Plat, taken together with the Deed, effected a private dedication, which "created an easement." The trial court stated that "every owner of each lot has an easement to use the disputed property or beach area between the ordinary mean high water line and the west boundary of Lot 1 of Steamboat Bay Lots." The court further held that "[n]o owners of any lots in the Steamboat Bay Lots subdivision have any fee simple interest in the disputed beach property or private road."

Judgment was entered on July 26, 2011, holding that the Buffer Strip "is a shared, perpetual easement appurtenant to and benefitting all eight (8) lots of the Plat of Steamboat Bay." The Dorseys timely appealed.

## II.
## ISSUES ON APPEAL

I.  Did the district court err in concluding that the Buffer Strip was excluded from the Dorseys' chain of title?

II. Did the district court correctly conclude that the Harkers privately dedicated the Buffer Strip as an easement for the benefit of all of the subdivision lots?
III. Were the Dorseys' remaining arguments properly presented on appeal?
IV. Is either party entitled to attorney fees?

# III.
# DISCUSSION

## A. Standard of Review.

This Court limits its review of a trial court's decision to determining "whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law." *Shore v. Peterson*, 146 Idaho 903, 907, 204 P.3d 1114, 1118 (2009). Unless the trial court's findings of fact are clearly erroneous, they will not be set aside. *Id*. Accordingly, "even if the evidence is conflicting, if the findings of fact are supported by substantial and competent evidence this Court will not disturb those findings on appeal." *Id*. When reviewing a trial court's conclusions of law, "this Court is not bound by the legal conclusions of the trial court, but may draw its own conclusions from the facts presented." *Id*.

This Court's review of a district court's interpretation of an instrument depends on whether the instrument is ambiguous. *C & G, Inc. v. Rule*, 135 Idaho 763, 765, 25 P.3d 76, 78 (2001). Whether a document is ambiguous is a question of law, subject to free review. *Id.* If a document is ambiguous, it "presents a question of fact, and [this Court] will defer to the findings of the trial court so long as those findings are supported by substantial and competent evidence." *Id*. However, "[i]n the absence of ambiguity, the document must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument." *Id*. Interpreting an unambiguous contract is a "question of law and, therefore, a matter of free review." *Id*.

## B. The district court correctly concluded that the Buffer Strip was excluded from the Dorseys' chain of title.

In partially granting the Respondents' Motion for Summary Judgment, the district court held that the Dorseys had no fee simple interest in the Buffer Strip. It based this conclusion on the fact that title to the Buffer Strip "was specifically reserved from the initial conveyance" from the Harkers to the Wrights. Accordingly, no fee simple interest could pass from the Wrights to the Dorseys. This conclusion was reaffirmed in the district court's decision and judgment.

The Dorseys counter this with a clutch of arguments, the essence of which is that the Plat describes Lot One as ending at the shoreline. They contend that any property between Lot One

5

and the shoreline is "non-existent" and that a reservation of the Buffer Strip reserves nothing and has no legal effect.

The Respondents agree with the district court, and respond simply that the Harkers "specifically excluded" the Buffer Strip in their conveyance to the Wrights. Thus, they contend, the Wrights necessarily "had no title in the beach to convey to Dorsey in 1999."

We start with an examination of the conveyance from the Harkers to the Wrights. If the Harkers did not convey title to the Buffer Strip to the Wrights, the Wrights had no interest therein to convey to the Dorseys. After all, "[a] grantor can convey nothing more than he or she owns, and ordinarily a grantee acquires nothing more than the grantor owns and can convey." *Luce v. Marble*, 142 Idaho 264, 270, 127 P.3d 167, 173 (2005).

"In interpreting and construing deeds of conveyance, the primary goal is to seek and give effect to the real intention of the parties." *Benninger v. Derifield*, 142 Idaho 486, 489, 129 P.3d 1235, 1238 (2006). When an instrument conveying land is unambiguous, "its terms are settled as a matter of law using the plain language of the document." *Read v. Harvey*, 141 Idaho 497, 499, 112 P.3d 785, 787 (2005). Here, the Deed language is unambiguous. It conveys the following-described property in Bonner County:

> Lot ONE (1) Steamboat Bay Lots, a platted sub-division of Government Lot Five in Section 27, Township 60 North, Range 4 West Boise Meridian.
>
> It is specifically understood that the grantors reserve, as a common beach for all owners in said plat, that certain tract and beach lying between the mean high water line and the West boundary line of said Lot One. Said reserved beach being a tract approximately 20 feet wide between the waters of Priest Lake and the West boundary of the above described Lot One, and 132.87 feet in length.

It is clear that the Deed did not convey any interest in the Buffer Strip because a reference to the Plat indicates that the Buffer Strip is not encompassed within Lot One, as platted. The Dorseys contend that the language in the Plat dedication essentially annexed the Buffer Strip into Lot One. However, it is evident from the depiction of Lot One and the courses and distances indicated thereon that Lot One does not include the Buffer Strip. If Lot One was intended to have included the Buffer Strip, the western boundary of the depicted lot should have extended to the shoreline and the east-west lines of the north and south boundaries of the lot should have included the additional 20 or more feet to the shoreline. The precise depiction of Lot One on the Plat simply does not permit the conclusion that Lot One was intended to annex or include the Buffer Strip.

6

Furthermore, the Deed specifically reserves the Buffer Strip as a "common beach for all owners." There is no other instrument of conveyance in the record that could be construed as granting the owners of Lot One an interest in and to the property in the Buffer Strip. Therefore, we affirm the district court's conclusion that the Buffer Strip was excluded from the Dorseys' chain of title.

**C. The district court correctly concluded that the Harkers privately dedicated the Buffer Strip for the use and benefit of all lots.**

The district court based its conclusions regarding the Buffer Strip upon the content of the Plat and the Deed. It first held that the Plat was ambiguous. The court then indicated that in interpreting the Plat it would consider the "language of the Deed," which it examined alongside the "inartful" Plat language. The district court concluded that the ambiguity of the Plat was resolved by looking to the language of the Deed and the circumstances of the Harker–Wright conveyance. It held that, "as a mixed finding of fact and conclusion of law it was the intent of the Harkers to provide for roadway and beach access to all lot owners of the subdivision." The district court further held that the Harkers effected their intent by way of a private dedication that created easements for the benefit of "all lot owners." Consequently, the court found that "every owner of each lot has an easement to use the [Buffer Strip] between the ordinary mean high water line and the west boundary of Lot 1 of the Steamboat Bay Lots."

The Dorseys present a variety of arguments on this issue: 1) the Plat did not create the Buffer Strip; 2) the "subject to" language in the Wright–Dorsey deed could not have resulted in an easement; 3) the dedication in the Plat established that the Buffer Strip was part of Lot One; 4) the Respondents never argued that the Plat was ambiguous; 5) an allegedly ambiguous Plat could not also provide the requisite "clear and unequivocal" evidence of intent to make a dedication; 6) the Respondents never presented an easement argument; and, 7) "Idaho law does not provide for a private dedication of an easement."

The Respondents counter that the Plat was both patently and latently ambiguous. They further respond that Idaho law in fact permits private dedication of easements and cite pertinent case law. The Respondents also contend that they did plead an easement theory in their Amended Complaint.

Idaho law clearly "recognizes common law dedication of land for private use." *Ponderosa Homesite Lot Owners v. Garfield Bay Resort, Inc.*, 143 Idaho 407, 409, 146 P.3d 673, 675 (2006); *see also Armand v. Opportunity Mgmt. Co., Inc.*, 141 Idaho 709, 714, 117 P.3d 123,

7

128 (2005); *Sun Valley Land & Minerals, Inc. v. Hawkes*, 138 Idaho 543, 548, 66 P.3d 798, 803 (2003); *Monaco v. Bennion*, 99 Idaho 529, 532, 585 P.2d 608, 611 (1978). A private common law dedication, like a public common law dedication, consists of two elements: "(1) an offer by the owner clearly and unequivocally indicating an intent to dedicate the land and (2) an acceptance of the offer." *Ponderosa*, 143 Idaho at 409, 146 P.3d at 675 (quoting *Armand*, 141 Idaho at 714, 117 P.3d at 128). As to the first element:

> [t]he offer to dedicate may be made in a number of ways, including the act of recording or filing a subdivision plat depicting the specific areas subject to dedication, so long as there is a clear and unequivocal indication the owner intends to dedicate the land as depicted . . . . In determining whether the owner intended to offer the land for dedication, the court must examine the plat, as well as "the surrounding circumstances and conditions of the development and sale of lots."

*Id.* The second element, acceptance, is accomplished "when the offer is acted upon and lots are purchased with reference to the plat filed by the offeror." *Id.* Once common law dedication occurs, "an easement in favor of the lot purchasers" is created. *Id.*

In applying these rules, the *Ponderosa* Court examined a Bonner County plat that marked a particular area as "lake access." *Id.* at 408, 146 P.3d at 674. Though the "lake access" area was illustrated on the plat, it was not expressly mentioned in the plat's dedication, which stated that the owners "dedicate[d] to the public, for the use of the public as highways the roads shown upon this plat." *Id.* at 408–09, 146 P.3d at 674–75. We noted that "[n]either the plat nor any contemporaneous deeds, declarations or papers indicate who is to be the owner of the 'lake access.'" *Id.* at 409, 146 P.3d at 675. The appellant there argued that such a dedication would not create an easement. *Id.* at 410, 146 P.3d at 676. But the Court disagreed, stating that "under Idaho law a dedication, whether express or common law, creates an easement." *Id.* In doing so, the Court noted that this was consistent with prior case law, which similarly held that "the legal effect of illustrating a private road on a filed plat and 'dedicating' it is the creation of an easement in favor of lot purchasers." *Id.* (quoting *Monaco*, 99 Idaho at 533, 585 P.2d at 612). Thus, this Court found that the dedication in the *Ponderosa* plat created an easement.

Here, although the Plat does not particularly demonstrate a dedication of the Buffer Strip, the Deed clearly does. In first examining the Plat, the district court accurately characterized the Plat language as "inartful." The Plat's Owner's Certification states:

> It is the intent of the Owners that lot 1 and the 20-foot private road as shown on the herein plat shall include the lands lying between the side lines produced to the mean-high-water-line of Priest Lake.

> The use of the 20-foot Private Road as shown on the herein plat is hereby dedicated to the adjacent lot owners. Access to public road cannot be guaranteed.

The district court correctly found that the Plat is ambiguous. On the one hand, it implies that Lot One includes "the lands lying between the side lines produced to the mean-high-water-line of Priest Lake." This provides the soundest basis of the Dorseys' argument that Lot One in fact includes the Buffer Strip. The Dorseys further argue that the "shall include" sentence says nothing about dedication, whereas the following paragraph states that "[t]he use of the 20-foot Private Road as shown on the herein plat is hereby dedicated." Based on this contrast, the Dorseys conclude, "only the road is dedicated to use of the adjacent lot owners."

On the other hand, the depiction of Lot One on the Plat clearly does not include the Buffer Strip, nor is the Buffer Strip included within the legal description of Lot One or of the platted subdivision. The Dorseys' proposed interpretation does nothing to resolve the patent ambiguity of the Plat's reference to the Buffer Strip being part of Lot One, despite its visual depiction to the contrary. In any event, this Court's analysis must look beyond the Plat itself. Because the Plat is ambiguous, this Court must determine the Harkers' intent "from all surrounding facts and circumstances." *See Gardner v. Fliegel*, 92 Idaho 767, 771, 450 P.2d 990, 994 (1969). The Deed quickly resolves any confusion. The two documents, taken together, show that the Harkers intended to privately dedicate the Buffer Strip.

Of all the circumstances surrounding the execution of the Plat, none is more significant than the Deed. For one thing, it was executed and delivered by the Harkers to the Wrights the same day and immediately after the Harkers' Plat was approved and accepted by Bonner County. Moreover, it reserves "that certain tract and beach lying between the mean high water line and the West boundary line of said Lot One"—unquestionably the Buffer Strip. The Buffer Strip is clearly shown on the Plat and the Deed describes the "reserved beach" as being 132.87 feet in length along the west boundary of Lot One, which is exactly the length shown on the Plat. All told, while the Plat itself creates some confusion regarding the dedication, the Deed resolves it with specificity—the Buffer Strip was meant to be dedicated for the use of all subdivision lots. And, the Deed from the Harkers to the Wrights, which clearly stated the dedication, was

unquestionably accepted by the Wrights, fulfilling both elements of a private common law dedication.[2]

The Dorseys' remaining arguments are without merit. They contend that the Respondents "neither pled nor argued" that the Owner's Certification contained in the Plat was ambiguous, but a cursory glance at the record shows this is wholly incorrect.[3] The Dorseys similarly contend that the Respondents never presented an easement argument. However, while Respondents did not specifically say "easement" in their amended complaint, they did seek a "determinati[on] that said Common Beach area is appurtenant to the ownership of all the Steamboat Bay Lots." Further, the Dorseys present a confused claim regarding the warranty language in the deed from the Wrights to the Dorseys—they argue that its "subject to" provision could not create an easement. This contention misses the mark in two respects: first, the Dorseys offer no cogent argument or authority providing that warranty language in general would undo an easement by private dedication. Second, the language of the Deed and Plat is what created the easements at issue, not the Wright—Dorsey deed. Even if the Dorseys presented a cogent argument on this point, they picked the wrong deed to argue about—the Wright–Dorsey deed would have no effect on the preexisting private dedication at issue here. It would have served the purpose, however, of putting the Dorseys on notice of the reservation contained in the Deed.

The Dorseys further contend that "Idaho law does not provide for a private dedication of an easement." However, as stated above, that is simply not the case. *See, e.g., Ponderosa*, 143 Idaho at 409, 146 P.3d at 675 ("Idaho recognizes common law dedication of land for private use . . . . Once common law dedication is accomplished, it has the legal effect of creating an easement in favor of the lot purchasers.")

---

[2] The Dorseys contend that *Asbury Park, LLC v. Greenbriar Estate Homeowners' Ass'n, Inc.*, 152 Idaho 338, 271 P.3d 1194 (2012), where we declined to find a private common law dedication because of a conflict between the recorded plat and the CC&Rs, controls here, negating the existence of a dedication. There, we noted that "one cannot show a clear and unequivocal intent to dedicate where the alleged offeror demonstrates intent inconsistent with a dedication." *Id.* at 344, 271 P.3d 1200. However, *Asbury Park* does not apply here because the intent of the Harkers is clear from the Deed. The Plat here is not so much inconsistent with the Deed but, rather, internally inconsistent—capable of being read as supportive of the position of either party. Again, the Deed clearly resolves the ambiguity of the Plat in favor of a dedication and the dedication was obviously accepted by the Dorseys' predecessor in interest.
[3] For example, at trial, Respondents' Counsel stated: "I still disagree with [Dorseys' Counsel]. I think there is some inherent ambiguity on the plat. [The plat illustration] is ambiguous or at odds with the language in the certificate above their signature that says the lines should be produced to the mean high water line. So there's some ambiguity in the plat. Regardless of that, that ambiguity is abundantly clarified by the language four days later in the [Deed]."

Some conflicting evidence does exist that Lot One included the Buffer Strip—namely, the inartful language in the Plat's dedication and one surveyor's testimony. But conflicting evidence alone is not sufficient to overturn a trial court's determination if it is supported by substantial, competent evidence to the contrary. In sum, substantial and competent evidence supported the district court's conclusion that the Plat and the Deed privately dedicated the Buffer Strip as an easement for the benefit of all lots. We therefore affirm its conclusion.

**D. The Dorseys failed to properly present their remaining arguments on appeal.**

This Court has long held that it "will not consider issues cited on appeal that are not supported by propositions of law, authority or argument." *Woods v. Sanders*, 150 Idaho 53, 60, 244 P.3d 197, 204 (2010); *see also Bingham v. Montane Res. Assocs.*, 133 Idaho 420, 427, 987 P.2d 1035, 1042 (1999). Stated differently, even if "an issue is explicitly set forth in the party's brief as one of the issues on appeal, if the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court." *Liponis v. Bach*, 149 Idaho 372, 374, 234 P.3d 696, 698 (2010).

The Dorseys brought a myriad of unsupported issues on appeal: 1) Respondents are judicially estopped because they alleged "the area in dispute remained owned/vested in the original platting party, HARKERS. Respondents could not be co-owners or co-tenants of the same parcel"; 2) Respondents failed to meet the statute of limitations "requirements of Idaho Code § 5-203 or §5-205 because they were never seized or possessed of the real estate within 5 or 20 years as required by law, nor did they bring this action within the time period"; 3) the trial court "erred in not finding that DORSEY has the benefit of Idaho Code § 5-206," the constructive possession statute, and "in shifting the burden of proof on the issue of adverse possession"; 4) that the Respondents "sued Harker," which "could be fatal to their case [because] they haven't showed us they served them," and 5) that the Respondents "falsely state[d]" that the district court concluded that the "Deed language dedicated an easement on the common beach," arguing that "District Judge Verby found and concluded just the opposite."

To first dispose of this last argument, one simply need look at the record. The Dorseys vehemently argue the district court did not find that the "Deed language privately dedicated an easement on the common beach and road in favor of all eight (8) lots of Steamboat Bay." But in fact, the district court found:

11

[T]he Harkers, when they made the dedication, did not convey any interest to anyone in fee simple. They created an easement. So I make mixed findings of fact and conclusions of law . . . that every owner of each lot has an easement to use the disputed property or beach area between the ordinary mean high water line and the west boundary of Lot 1 of Steamboat Bay Lots.

. . . .

I do find that all lot owners have easements. Mr. Murphy has an easement because of his ownership of Lot 7 and 8; the Browns, because they own Lots 3 and 4; Rosses own Lot 5 and 6 and the Dorseys own Lot 1 and 2.

It is clear the district found that the Deed and Plat privately dedicated an easement in favor of all lots, and that the Respondents correctly so stated. There is no basis for the Dorseys' contentions that the district court found "the opposite," or that the Respondents "falsely stated" anything to this Court.

As for the rest of the Dorseys' arguments—those regarding judicial estoppel, adverse possession, the statute of limitations, and improper service—each was either raised as an issue but not developed, or was dealt with only in passing. In either case, the Dorseys do not provide cogent argument or authority to support their miscellaneous claims. Therefore, we decline to consider these unsupported issues on appeal.

**E.  Neither party is entitled to an award of attorney fees on appeal.**

Both parties seek attorney fees pursuant to Idaho Code §12-121. The Dorseys did not prevail on appeal and thus are not entitled to attorney fees. The Respondents did prevail on appeal but are not entitled to an award of fees under I.C. § 12-121. Although the foundation of the Dorseys' case was weak, because of the ambiguous language in the Plat, their case was not altogether without foundation.

## IV.
## CONCLUSION

We affirm the judgment of the district court and award the Respondents their costs, but no fees, on appeal.

Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.